CLARK executor of CLARK *against* SANDERSON
executor of SANDERSON.

1810.

*Chambersburg,*
*Saturday,*
October 6.

IN ERROR.

If the subscrib-
ing witness to a
bond is *out of*
*the jurisdiction*
*of the court,* and
upon diligent
inquiry no per-
son can be found
within the juris-
diction who can
prove his hand-
writing, the
handwriting of
the obligor may
be proved. *Qu.*
whether if the
handwriting of
the witness is
proved, that of
the obligor
ought not to be
also.

THIS was an action of assumpsit in the Common Pleas of *Cumberland*, against the executor of *Robert Sander-son*, upon a promise by the testator to pay the debt of his son, which was due upon a single bill to *Clark* the testator of the plaintiff.

The declaration set out the single bill; and upon the trial of the cause, the plaintiff, having proved that the only subscribing witness to the bill had resided about seven years before in *Cumberland* county, that about six years before she was living in *Baltimore*, that inquiry had been made for her in *Cumberland* without finding her, but that no inquiry had been made in *Baltimore*, and finally that diligent search had been made in *Cumberland* for some person who could prove the handwriting of the witness but without effect, offered to prove the handwriting of the obligor. But this evidence was objected to, and overruled by the court, who sealed a bill of exceptions, upon which the question came before this court.

*Carothers*, for the plaintiff in error, argued that under the facts in evidence, it was competent to him to prove the handwriting of the obligor. The ancient strictness, he said, upon the subject of proof by attesting witnesses, was not founded in very good reason, and was fast wearing away. Another principle of the law of evidence, most reasonable as well as convenient in its nature, had come in to moderate the severity of the old rule, namely, that the best evidence within the power of the party and that the nature of the case would admit of, should be received; and upon this principle there could be no doubt that the obligor's handwriting could be proved, if the subscribing witness were out of the jurisdiction of the court, and it was not in the power of the party to prove his handwriting. This rule is asserted

1810.

CLARK
v.
SANDERSON.

by Judge Rush in *Lesher's Lessee* v. *Levan*, (a) where at the same time he was contending for a stricter rule of evidence than the majority of the court. It is not necessary that the witness should be in a foreign country, or even out of the state; it is sufficient to let in the other proof, if he is not found, upon inquiry, to be within reach *of the process of the court.* Absence in a foreign country, is sufficient, because the process cannot reach him; so if he is out of the state, as in *Oliphant* v. *Taggart*, (b) which is our case; but the reason goes the whole length contended for, whenever he is out of the reach of process. In some instances, it is true, his deposition may be obtained under a commission, but this is a voluntary thing on the part of the witness; and it is of the greatest inconvenience that a party should be forced to attach an original paper to a commission, at the hazard of its loss or spoliation. In fact, the whole system of proof by attesting witnesses has been questioned; and, contrary to *English* decisions, the confession of the debtor has been held sufficient, without even inquiring for the witness. *Hall* v. *Phelps.* (c) Proof of his handwriting is doubtless more satisfactory to the mind at all times, than proof of the handwriting of a witness.

*Duncan*, for the defendant in error, answered, that the rule of evidence was to be taken as it had been established by decision, without scanning too nicely the reason of it. The best evidence of the sealing and delivery is to be obtained from the witness who attested it with his signature. The proof of handwriting of party or witness cannot be equal to this; for if the hand of the witness be proved, still the circumstances of the delivery, which may be material, are not proved. If however he is dead, then his handwriting is better evidence than that of the party, because it is signed in attestation of a sealing and delivery, which are essential to make it the party's deed. The handwriting of the party comes in, therefore, as the most defective evidence, the most unsatisfactory, and a ground is to be laid for it. Death of the witness is one. Absence in a foreign country is another. But no other

(a) 2 *Dall.* 96.　　(b) *Bay's S. C. Rep.* 255.　　(c) 2 *Johns.* 451.

1810.

CLARK
v.
SANDERSON.

species of absence but this has been held to answer. The old rule required the witness himself, if alive; the modern rule requires him unless abroad; and the relaxation should not be carried further. *Peak. Ev.* 100. The relation of this state to *Maryland,* or the other states, is not that of a foreign country. There is no difficulty in obtaining evidence under a commission to any of them; and at least inquiry should have been made at *Baltimore,* where the witness had resided, to ascertain whether such commission might not have been executed. The rules of evidence should be held sacred. Innovations upon them, are innovations upon private security; and the Supreme Court of New York shew they are aware of this, by confining the principle of *Hall* v. *Phelps* to the very sort of case in which it was ruled, that of a promissory note, and refusing to admit the confession of the obligor of a bond, without accounting for the absence of the subscribing witness. *Fox* v. *Reil.* (a)

TILGHMAN C. J. Questions, like that now before us, have occurred at *Nisi Prius,* but have never before been brought into this court. The law has not been settled, and I am glad that an opportunity is offered, of reducing it to certainty. The rule which requires that a bond should be proved by the subscribing witness is founded in reason; because he is the person whom both parties have chosen to bear testimony to the contract. But the nature of the thing admits of very powerful evidence, independent of the subscribing witness. Proof of his handwriting, in case he is out of the way, and proof of the handwriting or confession of the obligor, would be very satisfactory, unless counteracted by other evidence. For a long time, the courts were extremely rigid in insisting on the rule, in case the witness was living. At length it was perceived that this excessive strictness was productive of more harm than good. An act of parliament, 26 *Geo. 3. ch.* 57. *sect.* 38., was made in *England,* for the purpose of facilitating the proof of instruments of writing executed in the *East Indies.* Soon afterwards, the courts were of opinion, that where the witness was in foreign countries, proof of his handwriting might be admitted on common law princi-

(a) 3 *Johns.* 477.

ples. *Adam* v. *Kerr*, 1 *Bos.* & *Pull.* 360. At length it seems to have been thought reasonable, that where the witness was out of the jurisdiction of the court, proof of his handwriting should be received. 2 *East* 250., *Prince* v. *Blackburn.* This appears to me, on the whole, to be the best rule for the admission of secondary evidence, because it produces the greatest certainty. If the matter is made to depend on the degree of difficulty in procuring the testimony of the subscribing witness, no man will know what the law is. Whether the distance of a thousand or one hundred miles would be sufficient cause to admit secondary evidence, would depend on the ideas of the judge who tried the cause. Nor is there any thing unreasonable in admitting this kind of evidence, when the witness is out of the jurisdiction of the court. The witness cannot be compelled to attend the court, consequently the writing to be proved must be sent to the witness, which is attended not only with inconvenience but some risk of loss; and after all, the jury are to decide whether the secondary evidence is satisfactory. It is always to be understood, that there must be no fraud or collusion in getting the witness out of the way. If any thing of that kind can be proved, his testimony is not to be dispensed with. In the case before us the subscribing witness was out of the state. According to the principle that I have laid down, then, proof of her handwriting was admissible. But this was not to be obtained, although search was made for proof in that part of the state where she had formerly resided. It will often happen, that the handwriting of witnesses cannot be proved, because persons are called as witnesses who reside in the family of the parties, not much accustomed to writing, and whose writing is very little known. What then is the next best evidence? The handwriting of the obligor. I rank the handwriting of the obligor after that of the witness, in compliance with the rule which has been established; although in my own opinion it is more convincing evidence of the execution of the bond by the obligor, than proof of the writing of the witness. When there is no doubt of the writing of the obligor, it is so difficult to account for his name being there, unless he executed the writing, that there will be little doubt of the execution. So important, indeed, is the handwriting of

1810.

CLARK
v.
SANDERSON.

the obligor, that I am not satisfied its proof ought to be dispensed with, even where the writing of the subscribing witness has been proved. Considering all the facts stated in the bill of exceptions, I am of opinion, that the evidence offered by the plaintiff in the court below, of the handwriting of *John Sanderson*, was improperly rejected; and therefore the judgment should be reversed, and a *venire facias de novo* awarded.

YEATES J. The primary rule of evidence is, that the law expects the best evidence which it is in the power of the party to produce. Hence it follows, that any instrument with subscribing witnesses ought to be proved by one of those witnesses, who have been called in by the parties to attest the execution thereof. If the person offering the instrument in evidence cannot procure the attendance of the subscribing witnesses, from causes which it is not in his power to remove, as death, absence in a foreign country, &c., he is then permitted to offer secondary evidence, the handwriting of the witnesses. Such is the law, although in fact the handwriting of the party to the instrument would be stronger proof of its execution, than the signature of a witness, who might be prevailed on to subscribe his name, and whose handwriting might be proved in case of his absence by other witnesses. In consequence hereof, several cases occur in the *English* books, where, in addition to the signatures of the witnesses, the judges have required proof of the handwriting of the party. But the decisions on this subject are by no means uniform. See 1 *Peake's Evid.* 100, 101.

The question here is, whether such facts are stated in the bill of exceptions, as would have let in the plaintiffs in error to the secondary proof of the single bill laid in their declaration.

It has been urged, that the execution of the bill might be proved under a commission to *Baltimore*, to which city the witness removed six years before the trial. It is answered, that she could not be compelled to attend there before commissioners, and that sending important documents abroad is always attended with a degree of risk as well as expense. A general rule must be laid down as to witnesses

residing in our sister states, however near to, or remote from the place of trial. It is certain, that the plaintiffs could not inforce her personal attendance from *Maryland*, or even before commissioners there, under the appointment of the court of Common Pleas of *Cumberland* county. As to the witness then, the plaintiffs had no more compulsory power over her, than if she resided in a foreign country. They were then bound to shew, that they had used due diligence to prove her handwriting. This they did use, but without effect, in *Cumberland* county, where she lived before her removal to *Maryland*. I take this to have been the usual course since the *American* revolution at least, and perhaps introduced by the provisions of the recording act of *March* 18*th* 1775. Under the old act of 1715, deeds, previous to being recorded, were to be proved by the acknowledgment of the grantor; or in case he was dead or could not appear, by the oaths or affirmations of *two* or more of the subscribing witnesses. 1 *Dall. St. Laws* 109. *sec.* 23. But under the act of 1775, the deed might be proved by *one* or more of the subscribing witnesses, *Ib.* 703. *s.* 11.; and under section twelfth, " where " the grantor and witnesses of any deed or conveyance are " deceased, *or cannot be had*, the deed may be proved by " proof of the handwriting of such deceased witness or wit- " nesses, or where such proof cannot be had, by proof of the " handwriting of the grantor or grantors." As far as my experience has gone, the practice of courts of justice has conformed to these regulations, when deeds or papers have been offered in evidence on trials; and which I presume corresponds with the late *English* practice. 1 *Bos.* & *Pul.* 360. *Adam* v. *Kerr*, 2 *East.* 250. *Prince* v. *Blackburn.* I am not disposed to innovate or break in upon the rules of evidence, an adherence thereto being of the utmost moment to the common safety. I can see no mischiefs which may result from the propositions I have laid down. If the instrumental witnesses can be had by the person offering the paper in evidence, they or some one of them must shew their attestation by their own testimony. If they cannot be had, and their absence from court can be satisfactorily accounted for, as that they have paid the common debt of nature, that they reside in a foreign country, or what is tantamount as to the

1810.

CLARK
v.
SANDERSON.

party, that they *are out of the jurisdiction of the court, not amenable to its process, or beyond its reach,* the next best evidence in the party's power, viz. the signature of the witnesses may be shewn: but if this cannot be done, then inferior legal evidence will be received, namely, the signature of the party, or his confession to that effect. What else can he do? What substantial principle of justice or policy will oblige him to do what in itself is impracticable? *It* cannot be pretended, that the law enjoins on him this injurious task. Let it be understood, that all I have said goes on the ground that the most honest efforts are verified to the court, to have been used to fulfil the duty which the law enjoins; because otherwise, the general rule of law will not be relaxed in favour of *laches* and negligence. I have no reason to assert that these efforts have not been used in the present instance; and therefore think the secondary evidence should have been received. I am of opinion, that the judgment of the court of Common Pleas should be reversed, and a *venire facias de novo* be awarded.

BRACKENRIDGE J. I consider the rule of calling the subscribing witnesses to a writing, or proving their handwriting, before proof can be let in of the handwriting or even acknowledgment of the maker, as founded upon very questionable reason, and to be restrained in its application. It is founded on this reason. The subscribing witnesses are supposed to be called upon by the person to whom the writing is made, as those on whom he depends to attest it in case of the want of proof; and he must resort to these by his own agreement before he can recur to other proof. Or for another reason, that the person who makes the writing has an interest in having them, as by the act of witnessing they were considered as those who must in the first instance be called upon to prove it; so that if the making was attended with any circumstance that might avoid it in law or equity, it might be shewn.

It might rather be said, and which in the understanding of the people is the case, and is the true reason in fact of calling witnesses, that if the person to whom the writing is made should not be able to prove the handwriting of the maker, or acknowledgment that it is his handwriting, he

might recur to the witnesses or proof of their handwriting; so as to have an enlarged chance of establishing the instrument. In such case the proof of handwriting of witnesses, or maker, might be considered of the same grade, and as all of a nature primary and original. At all events proof of the handwriting of the maker is of equal rank with that of proof of the handwriting of the witnesses. The rule, however, is settled otherwise; but in analyzing the reason of it, and seeing that to be questionable or otherwise, we are justified in amplifying or restraining the application of it. I am therefore disposed to think that the being out of the reach of the process of the court, should be the circumstance on which the letting in what is called the secondary evidence ought to be left to depend; though I should be as well satisfied that proof of the handwriting of the maker could be admitted in the first instance, and that it should be left to the defendant to give notice that he meant to call the subscribing witnesses with a view to make out an equity explaining the assumpsit.

In the case before us, I think enough was offered to be proved, to shew that the witness was out of the reach of the process of the court; or to found a reasonable presumption of it, to satisfy the court that she was not kept back by the person who is said to be bound to call upon her. In that case, I think the proof offered of the handwriting of the maker ought to have been admitted.

But the action was not upon the note with a plea of non-assumpsit going to the making, but to the promise to pay the debt due. The note was collateral to the promise or under taking of the third person. The plea of non-assumpsit goes to the promise to pay the debt, not to the debt being a debt or not. That would seem to have been admitted by the undertaking. It is the debt which *John Sanderson* owed to the plaintiff that is undertaken to be paid. In this case I think the note of *John Sanderson* subscribed with his name, and that handwriting proved, would be admissible to establish the identity of the writing purporting to ascertain the debt, and which was undertaken to be paid, as it is made a part of the bill of exceptions, and stated in it that the bill offered in evidence is *the same which is set forth in the declaration.* Had

1810.

CLARK
*v.*
SANDERSON.

1810.

CLARK
*v.*
SANDERSON.

it been intended to put the making of this note in issue, the plea might have given notice of this. But it is the promise to pay that note or bill, not the making it, that any one would understand to be the matter to be proved. It is taking the plaintiff by surprise, to hold him to proof of what was not directly in issue, at least to hold him to the strictness of the rule of calling the subscribing witnesses. It is as if a man had undertaken to deliver a specific thing; any proof that would go to establish the identity of the thing, might be given. I will admit that I find it difficult to explain myself satisfactorily on this subject, and get over the application of the rigid rule to this particular case; but it would seem to me that it works a general inconvenience to carry the application to a collateral promise to pay a bill specified or owed by any one; and would obviously do great wrong in this case, where there is no pretence of fraud in making the bill. It does not appear from the pleading, or any thing suggested in the bill of exceptions, that there was a defence to the bill itself, but solely to the promise to pay it. I think, therefore, it might have been admitted, and am of opinion to reverse the judgment.

Judgment reversed,
and *venire de novo.*