Tilghman C. J.,
after stating the principal facts connected with the admission of the draft in evidence, delivered the opinion of the Court as follows.
The evidence was very important to the plaintiffs, who *221 contended, that the land which was surveyed and returned for Ephraim Blain (father of the defendant,) on Byers’s application, was in fact previously surveyed, and ought to have been returned for them, on the application in the name of William Carothers. They supposed that the survey on Byers’s application was in truth not made until the year 1798, though alleged by Mr. Lyon with intent to give an unjust advantage to his near relation, Mr. Blain, to.have been made in 1787. But was this proper evidence? If the work was done in the course of Mr. Lyon’s official duty, it was evidence i but I protest against one of the principles contended for by the plaintiffs’ counsel, that it must be presumed to be an official paper, because found in the office, and among the official papers of the deputy surveyor. We know that these deputy surveyors are much employed in private business, and that it is very probable their private papers may be sometimes mixed with their official ones, without any ill intention. It is possible too, that private papers may sometimes be introduced into the office either by themselves or others with a fraudulent design. But I grant, that neither accident nor fraud should be presumed, and that all papers found among the official papers, may fairly be supposed to be official, (unless the contrary be proved,) provided there were any orders in the hands of the deputy surveyor to the execution of which the papers in question might relate. By this test we must try the draft offered by the plaintiffs. The deputy surveyor had in his hands, at the time the survey represented by this draft is supposed to have been made, an . application and a warrant belonging to Carothers, the former for 300, the latter for 100 acres, on which no surveys' had been returned. The draft contains 1492 acres, and does not seem to represent a survey either on the application, or the warrant. It appears to be the outline of all the lands claimed by Carothers, perhaps under various rights—but the land now in controversy is contained in it. I had Considerable doubt at first, whether it did not appear on its face, to be merely a private survey made at the request of Carothers; but upon reflection, I think it would be going too far to say, that it might not relate to the application, or the warrant, on which no survey had been returned. Mr. Lyon might have thought it necessary, before he made these returns, to run this outline, noting as he has done, the interferences of other rights, *222 among which we see nothing of a survey on Byers’s application. In that point of view it was a paper, proper to be submitted to the jury, who'would give it such weight as in their judgment it might deserve. I am therefore of opinion that it was good evidence.
The record contains two other bills of exceptions, relative to a paper offered in evidence by the plaintiffs, purporting to be the last will and testament of William Carothers, junr. There were three subscribing witnesses to this will; Armstrong Carothers, (óne of the plaintiffs in this cause, and also a devisee claiming part of the land in dispute, under the will,) James Carothers, deceased, and John Kean, also deceased. The plaintiffs proved that John Kean was deád, and also James Carothers, and that due diligence had been used without success, to find a witness who could prove the handwriting of James Carothers. They then offered to prove the hand writing of the testator, to which the counsel for the defendants objected, but the Court admitted the evidence. It is an important circumstance, that John Kean had appeared before the Register of Wills, and proved the will by his oath in the usual form, but none of the other subscribing witnesses had proved it. This appeared by the original will, produced to the Court, with the certificate of the Register annexed.—What objection then, could there be, to the proof of the testator’s writing? The objection was, that the plaintiffs should first have proved the hand-writing of the subscribing witnesses, two of whom were dead, and one, (Armstrong Carothers,) a party to this suit. It is true, that in general, the subscribing witnesses are first to be resorted to. If living and within the jurisdiction of the Court, they should be produced. If dead, their hand-writing should be proved. But under particular circumstances, the general rule is dispensed with. Let us consider the circumstances attending each of these subscribing witnesses. If Armstrong Carothers had been a good witness at the time of the execution of the will, and had afterwards become interested, it might have been a question, whether his hand-writing ought not to have been proved. But that was not the case. He was a devisee in the will, and interested from the beginning -he was therefore never what our act of assembly calls a credible witness;—he was never a competent witness. Under the circumstances of the case, he was to be considered as if he had *223 never been a subscribing witness, and it would have been improper to prove his hand-writing. Next as to James Carothers.—The Court below had satisfactory evidence that due diligence had been used, in searching fot a witness who knew his hand-writing. But none such could be found. The case falls therefore within .the reason of Clark v. Sanderson, decided by this Court, and reported in 3 Binn. 192. According to the principles of that decision, proof of the hand-writing of the witness is dispensed with. The remain-, ing witness, John Kean, had proved the will, (so far as his oath could go,) before the Register, and this certainly was much more to the purpose than proof of his hand-writing to the Court and jury.-—He had sworn to his own handwriting, and his oath before the Register was evidence in this cause. It was administered by an officer authorised by law and acting in the course of his duty.—By our law, the Register takes probate of wills disposing of both real and personal estate. As to personal property, the probate is conclusive. But not so as to land. The will may be controverted in an ejectment; but our Courts of law have always admitted the probate before the Register as prima facie evidence. If this will had been proved by two witnesses before the Register, the probate would have been evidence, and there is the same reason for admitting as evidence, the oath of only one,' which though not sufficient of itself to establish the will, is good as far as it goes, and with the addition of one more, will make complete proof. If James Carothers had been living and had come into Court, his oath, added to that of Kean before the Register, would have been sufficient. But he was dead, and his hand-writing could not be proved. It was necessary, therefore, to resort to the hand-writing of the testator, and the Court of Common Pleas were right in admitting it.
This leads into the third bill of exceptions.—The plaintiffs, having proved the hand-writing of the testator, offered the will, with the oath of John Kean annexed, in evidence, and the Court admitted it. After what has been said, my opinion must be evident, that the will was properly received in evidence.—Our law requires that a will should be proved by tvjo witnesses. But it does not require that the witnesses should subscribe their names, or that they should be present at the execution of it. The signature of the testator made *224 in the absence of all witnesses and proved by two witnesses, is sufficient. Suppose then, that the will is signed by the testator in presence of any one subscribing witness. The oath of that witness, and the oath of another witness who could swear to the hand-writing of the testator, would make two credible witnesses, within the meaning of our act of assembly. This is the very case before us in spirit, though not in letter. We have the oath of one subscribing witness, and of another witness who proved the hand-writing of the testator, though he was not present at the execution of the will, and good reasons have been given why the testimony of the other subscribing witnesses was not produced.
I am of opinion that there is no error in this record, and therefore the judgment should be affirmed.
Duncan J., who had been counsel for the plaintiffs in error, gave no opinion.
Judgment affirmed.