BENNET *versus* ROBINSON'S Adm'r.

1. Where the execution of an attested instrument, whether under seal or not, is properly in issue, the evidence of the subscribing witness is the best, and only admissible evidence; unless the impracticability of producing it, can be satisfactorily shewn; or, unless 'the subscribing witness becomes legally incompetent from some cause, not chargeable as a fault, against the party, on whom the making of the proof devolves.
2. *Semble,* that such *secondary* evidence might be allowed, where the subscribing witness becomes the administrator or executor of the obligee or payee—*ex necessitate;* and, then only for what it is worth.
3. Evidence of the hand writing of the subscribing witness, to a promissory note, or of the signature of the maker, and his admission of its execution; is not admissible, in an action against the maker, where such subscribing witness, after attesting the note, becomes the assignee thereof, and sues as plaintiff.

This action was debt, by Bennet, in Morgan Circuit court. The note of Robinson, the intestate, was the cause of action, and the plea of his administrator was, that his intestate had not executed the note declared on. The note appeared to have been attested, by the present plaintiff, Bennet, as a subscribing witness: it was made payable to one Hacket, and, by him, indorsed to Bennet, after its execution. In order to prove the making of the note, the plaintiff offered proof of his hand writing; and, contended, that, in all cases, where a witness becomes interested, his hand writing should be allowed to be proved. But the court held otherwise, and rejected the proof. The plaintiff then proposed proving the signature of the maker, and his admission of having sign-

ed the note; which evidence the court also rejected and this was the cause assigned in error.

*Hutchiion,* for plaintiff—*Thornton, contra.*

SAFFOLD, J. — The action was on a promissory note, purporting to have been drawn by Robinson, the intestate in favor of Hacket, who assigned the same, by indorsement, to Bennet, the plaintiff in error; who was also plaintiff below, and is the subscribing witness to the note. The plea denied the execution of the instrument. The attorney of Bennet, for the purpose of introducing the note, as evidence to the jury, offered proof of the hand writing of Bennet, as the subscribing witness; also of the signature of the maker, and of his admission of the note, as having been executed by him. This evidence was rejected, by the Circuit court.

The rejection of the evidence is the cause assigned for error.

This precise question is novel, in our courts, though the authorities show, that it has occurred, in a few cases, in other States of the Union; and, that numerous questions, bearing a near relation to it, have been adjudicated in America, as well as in England. The English decisions, the plaintiff insists, determine the question, on the principle of analogy, in his favor. The defendant contends for a material distinction between this case, and those relied on, to show error in the rejection of the evidence offered; that, the circumstance of its being the plaintiff's own voluntary act, that has deprived him, the defendant, of the evidence, on which he must be presumed to have mainly relied; and, it being

but a consequence of the same act, that the evidence in question, is rendered necessary : these considerations ought, on the principles of law and justice, to deny the plaintiff the benefit of the secondary evidence, whatever may be the effect of the exclusion.

No doubt is entertained of the existence of the general rule, that, where the execution of an instrument is in issue, which purports to have been attested by one or more subscribing witnesses, whether it be a specialty or simple contract; the party wishing to establish the instrument, must do so, by the testimony of the subscribing witness; unless there be some circumstance, to bring the case within some of the legal exceptions to the rule ; or, unless the instrument appear to be thirty years old—when, it is to be inferred, the witnesses are dead.    Among the various exceptions to the rule, the following have been recognised : that the attesting witness is dead, has become blind, insane—that he has, since the attestation, been convicted of an offence, which renders him incompetent, as a witness—that the witness has, since the attestation, become interested—as, where he has become the administrator of the obligee—that the witness is beyond the jurisdiction of the court—that he cannot be found, after diligent enquiry, made at such place or places, where it appeared, he was most likely to be found.    Any of these circumstances, and some others noticed, in the authorities, will excuse the non-production of the attesting witness, and authorise the introduction of secondary evidence, consisting of proof of his hand writing; and also, of the signature of the maker.[a]

It will be seen, that the numerous decisions, on this point in America, and in England, have, with

[a] 1 Starkie, 337 to 340, and authorities there cited.

few exceptions, treated proof of the hand writing of the subscribing witness, as a resort to secondary evidence.

*Starkie,* (vol. 1, p. 331,) adopts the language, which has been often reiterated in both countries; that "the law requires the testimony of the subscribing witness, because the parties, themselves, have selected him, as the witness; have mutually agreed to rest upon his testimony, in proof of the execution of the instrument, and of the circumstances which then took place; and, because he knows those facts, which are probably unknown to others. So rigid," says he, "is this rule, that it is not superseded, in the case of a deed, by proof of an admission, or acknowledgment of the execution, by the party himself."

It is true, this rule was greatly relaxed by a case cited from New York.[a]  There, in an action on an attested promissory note, proof of the confession of the maker, that he executed it, was held sufficient by the Supreme court of that State, without calling the subscribing witness, or accounting for his absence.— That court then viewed the contrary as a technical rule in the English courts—relative to sealed instruments; and as one probably adopted since the revolution—leaving them at liberty to decide that case on what they considered more correct principles, from analogy to other cases. *Judge Spencer,* in delivering the opinion, uses the strong language, that, "the notion that the persons who attest an instrument, are agreed upon to be the only witnesses to prove it, is not conformable to the truth of transactions of this kind, and, to speak with all possible delicacy, is an absurdity." And, (passing several intervening de-

[a] 2 John. R. 451.

cisions, in the same State, remaining to be noticed,)
in the case of *Henry* vs. *Bishop*,[a] which was on a seal-
ed instrument, the court, by Chief Justice *Savage*, [a]2 Wend.
recognized the strictness of the rule, as being the law 575.
in England, relative to written contracts, whether
sealed or not; he considered it to have been relaxed
as to instruments not under seal, by the case of *Hall*
vs. *Phelps*[b] and *Shaver* vs. *Ehle*,[c] at least in regard to
negotiable paper. He also concurred in the denun- [b]2 John.R.
ciation of the reason assigned for the rule, as previ- 451.
ously expressed by Justice *Spencer*, in its application [c]1 Ib. 201.
to either sealed or unsealed instruments. He, however,
said the old rule had been adhered to, by that court,
in regard to sealed instruments, and could only be
changed by the legislature. But neither of those judg-
es explained how they derived more power to repu-
diate the law, in regard to one instrument more than
another. It may also be noticed that the case of *Hall*
vs. *Phelps*, was on *certiorari*, from a judgment of a
justice of the peace, and was submitted without ar-
gument. And in the case of *Shaver* vs. *Ehle*, though
the court spoke of the relaxation of the rule, in respect
to negotiable paper, by the former case, without ex-
pressing particular approbation or dissent, they said,
it " would be very unsafe, unless great strictness and
certainty were required, in the secondary proof; and
they held it inadmissible, in that case, on the ground
that it did not sufficiently identify the note.

According to my researches, and those of the learn-
ed counsel concerned in this argument, the decision
in *Hall* vs. *Phelps*, was a departure from a very cur-
rent principle of decision, both in England and the
United States, as well before, as since its date. Nor
can I subscribe to the repudiation of the policy of the

general rule, with its various acknowledged excep-
tions, especially under statutes similar to ours, which
dispenses with all proof of either bonds or notes, fur-
ther than their bare production; unless the defendant,
when sued on them, will, on oath, deny their execu-
tion.   As, with us, there can be no necessity for an
attesting witness, unless there be some collateral, or
incidental, agreement, or some distrust between the
parties; when we find that the instrument presuppos-
ed some necessity, and a particular person is therein
designated as the witness, I consider it not irrational
to suppose that he understands the facts of the con-
tract, better than any other person except the parties,
and would often understand or recollect them better
than the parties themselves: also, that at the time of
the consummation of the contract, the particulars
thereof, were more explicitly and correctly declared,
than they would likely be by any subsequent casual
remarks, of either of the parties.   Hence the neces-
sity of producing the subscribing witness, unless pre-
vented by some cause over which the party requiring
the proof, had not a perfect discretionary control.

I do not find that the relaxation of the rule has been
recognised and confirmed, even in the same court.—
The case of *Mills* vs. *Twist*,[a] was an action of assump-
sit, on a written contract, to the execution of which
there were two subscribing witnesses, who were the
sons of the defendant.   On the day previous to the
setting of the court, the plaintiff inquired of the de-
fendant for the witnesses in order to *subpœna* them;
who falsely replied, they were gone on a journey.
On the question, whether, under these circumstanc-
es, the evidence of others, of the hand writing of
the witnesses was admissible, the court held, that

it was not; that the proof, that the witnesses could not be found, was too loose, to let in the secondary evidence of proof of their hand writing.—They said, there was no case, that had relaxed the rule to that extent; that the party was bound to show, that he had made fair and diligent enquiry, and could not procure the witness; that, in the case before them, there was not timely and sufficient diligence used.

In the case of *Jackson* vs. *Root*,[a] the question was, [a 18 John. 60] whether a receipt to which a subscribing witness appeared, but who was so aged and infirm, that he could not attend court, was admissible, as evidence, on proof, by another, of his hand writing. The court decided, it was not; and remarked that the witness, although very aged and infirm, did not appear to be incapable, from the state of his mind, to testify; and therefore, ought to have been examined, under a commission. I consider the two latter cases to have fully overruled the doctrine of *Hall* vs. *Phelps*, in the State of New York.

The case of *Fox* vs. *Reil*,[b] which was prior to the [b 3 Ib. 477.] two last quoted, was on a bond, concerning which, a similar question arose. A very learned opinion of the Supreme court, was declared by Chief Justice, *Kent*. The case of *Hall* vs. *Phelps*, having been relied on by the counsel, as decisive of the principle in that State, the Ch. Justice drew a distinction between specialties, and simple contracts. He said, he had concurred in the decision of the former case referred to, from a sense of the great inconvenience of the English rule, when applied to commercial paper, which circulates with equal facility and credit, without the incumbrance of a subscribing witness; and, because he

did not recollect a case, in which the application of the rule, requiring the subscribing witness, did not arise upon a specialty. He recognised, as an ancient and uniform rule, "that when the defendant has not acknowledged his deed, before a competent public officer; or has not expressly agreed to admit it in evidence, upon the trial; but, has put himself upon his plea of *non est factum*, the plaintiff must produce the subscribing witness, and give the defendant the benefit of an investigation of the circumstances attending the execution of the deed." He sketched the early history of deeds, and the manner of making, and determining the proof of their execution: together with the changes they have undergone, at different stages of the English jurisprudence; and concluded, by saying, that, to admit the proof, in the case before them, would be an innovation upon an established rule, and one which was not urged upon them by any strong considerations of public policy. He did not, however, refer to any authority, recognising a distinction in the rule of practice, in this respect, depending on the nature of the instrument, whether a deed or simple contract. On the contrary, the reporter subjoined a note, maintaining, that the rule applies equally to all written instruments, which are attested.[a]

The case, most favorable to the plaintiff, of any cited in argument, was that of *the lessee of Hamilton* vs. *Marsden*,[b] The action was ejectment, for a tract of land, which the plaintiff claimed, derivatively, under a location. Having proved a lease of the premises, by himself, to a certain John Magee, on the sixth June, 1785; and, that, the defendant claimed, under Magee, he rested his case. The defendant,

[a] 2 Maul. & Sel. 62 — Phil Ev 357

[b] 6 Bin. 45.

then, to enable himself to prove title, adverse to the plaintiff, offered a witness, to prove, that Magee had taken a lease of the premises from James Brown, and, being in possession, by virtue of the same, the plaintiff came, with two men, armed with guns, and threatened to turn him off, unless he would take a lease from Hamilton : and, in consequence, he did take the lease. The court admitted the evidence, to which the plaintiff's counsel excepted. Further, the defendant proved the circumstances attending Hamilton's lease from Brown to Magee, to which there were two subscribing witnesses, John Marsden, the then defendant, and Yost Marsden, both disinterested at the time of the attestation, but, who had become interested, subsequently, by their own act : and, having proved, by a witness, that there was an agreement, in writing, between Brown and Magee, he offered to prove the hand writing of those subscribing witnesses, as a ground for reading the lease to the jury. The court admitted the evidence, and the lease was read; to which, also, the plaintiff excepted. These opinions were sustained by the appellate court.

Chief Justice *Tilgman*, (whose opinion, as well as Justice *Yates's*, seems to have prevailed,) said, "the general rule is conceded, that where a subscribing witness becomes interested, after the time of subscribing, his hand writing may be proved ; but, the plaintiff's counsel contends, that this rule is not applicable to cases, where the witness becomes interested, by his own voluntary act. I find no warrant for this distinction. The authorities are to the contrary."

He referred to the case of *Godfrey* vs. *Norris*[a]——[a]1 Stra. 34 where the plaintiff, having been the only subscrib-

ing witness to the bond, had become administrator *de bonis non*, of the obligee; yet, his hand writing was admitted to be proved. He also cited *Sluby vs. Champlin*,[a] where it was decided, that a bond might be read in evidence, on proof of the hand writing of the subscribing witness, who was absent, in foreign parts, without proof of the hand writing of the obligor: and said, the court, in which he presided, had never decided to the contrary; and there seemed to be good reason, for adopting the same rule.— That, the evidence was not conclusive, and under suspicious circumstances, the jury might not be satisfied, without further proof.

Justice *Yates* said, "If the subscribing witness can not be had at the trial, a secondary mode of proof was allowed, from the necessity of the case: and referred to the English authorities, for many of the qualifications to the general rule, requiring the evidence of the subscribing witness; and which, in cases where it could not be had, authorised proof of his signature." This, he observed, was the mode of proof, known to the law, from immemorial usage; though he still adhered to the opinion, which he expressed in *Clark vs. Sanderson*,[b] that the hand-writing of the party to the instrument, would be stronger proof of its execution, than the signature of any witness, proved by other witnesses. But, that they must take the law as they found *it*; and, it would be attended with much uncertainty and inconvenience, if the rules of evidence should be changed, according to their abstract ideas of the reasonableness of them from time to time.

Here, we discover, that the main authority relied on, in the above recited case, is the recognition

of the principle, by other cases, that, if the subscribing witness shall become administrator to the contracting party, his signature may be proved, on the ground, that he is interested and incompetent, and, therefore, no better evidence can be had: and, this is viewed as a voluntary act, and placed on a footing with a private assignment, for the individual benefit of the parties thereto. I. perceive, however an important distinction, between the nature of the transactions. One may be appointed executor, without his privity or consent—or, he may, by kindred, be the person designated by law, to undertake the administration. In either case, though he has the power to decline, he may feel it a moral duty to act, to avoid great sacrifices to himself or others. He may by accepting the administration, acquire a far greater interest than the amount of the contract, to which he was the subscribing witness; and this, without any connivance or primary agency of his own; or, he may have but a nominal interest, connected with the moral duty to act for the greater benefit of others. It is, also, worthy of remark, that if the witness become administrator, it is without the agency of the obligee or payee: if he be nominated executor, this is presumed, to have been done, at a time, when the testator, if not immediately, approaching dissolution, is, at least, in melancholy meditation on his future destiny—a situation which would not permit him to machinate, and record a plan of fraud. Then, as the peculiar circumstances, in this respect, must, in each case, determine the admissibility of the secondary evidence, there would seem to be great propriety in recognising a regular and unsuspicious appointment, either as executor or administrator, as one, of the

many exceptions to the general rule, that the subscribing witness must be produced. But, in all cases, the correct doctrine is, " that it ought to be satisfactorily proved, that a reasonable, honest and diligent inquiry has been made, without any evasion, and without any design to overlook the witness.[a]

But, I think, it does not follow, that a purely discretionary act, to which the witness and obligee or payee, are presumed to have been prompted, by motives of private interest, alone—and which, in legal contemplation, is prejudicial to the obligor or payor—should deprive either of the benefit of the best testimony—that on which they had agreed to rely, at the time of making the contract: and this, for the benefit of the parties to such act, or either of them.

In the case of *January* vs. *Goodman*,[b] the court of common pleas of Pennsylvania, ruled, that if the parties to a promissory note, choose to have a subscribing witness, there is no *just ground*, for a distinction between the proof necessary, in the case of bonds and notes.----That the rule of law, as to the best evidence of the signature of a note, as well as the sealing and delivery of a bond, is, that no such proof shall be admitted, which *ex natura rei*, supposes still higher evidence behind, in the party's own possession or power. They further remarked, that, "as no solid distinction, between the case of bonds and notes can be shewn, upon principle: so, none appears, from the authorities;" and, that the case in 2d *Stra.* 1149, relative to the proof of promissory notes, before the jury of inquiry, was decisive of the rule.

The case of *Cooke* vs. *Woodrow*,[c] relates to an instrument, which appears to have been of the nature

of simple contract, and purported to have been exe-
cuted by John Withers, and to which John Purson
had subscribed his name as a witness.   The plain-
tiff tendered it in evidence, with proof, that the wit-
ness, more than a year before, left the District of
Columbia, declaring he would go to Philadelphia, or
New York; and that he had a wife, in New York.---
That he, in fact, went to Norfolk, and then said he
would go on further to the south, and had not been
heard of for the last twelve months.   A subpœna,
for him, had issued, to the marshal of the District of
Columbia; but he could not be found there.   The
plaintiff then offered to prove the hand writing of
the subscribing witness, and of the maker of the in-
strument.   Chief Justice *Marshall,* in delivering the
opinion of the court, says, " the rule of evidence is,
that the best evidence must be produced, which the
nature of the case admits of, and which is in the
power of the party.   In consequence of that rule,
the testimony of the subscribing witness must be had,
if possible.   But, if it appear, that the testimony of
the subscribing witness cannot be had, the next best
evidence, is proof of his hand writing."   In that
case, it did not appear, that sufficient diligence had
been used, to procure the testimony of the witness---
that a subpœna should have been sent to Norfolk:
without such proof, neither the evidence of the sig-
nature of the witness, nor of the maker of the in-
strument, was sufficient.

The case of *Spring* vs. *S. C. Insurance Co.*[a] is ma-
terial, only, to shew, that ten years since the Su-
preme court of the United States continued to regard
proof of the hand writing of the subscribing wit-
ness only as secondary evidence.   That court held,

[a] 8 Wheat. 268

that the evidence, that the subscribing witness to a deed, had been diligently inquired after, having gone to sea, and been absent for four years, without having been heard from, was sufficient to raise the presumption of his death, and let in secondary evidence of his hand writing.

It is said, by *Phillips*, (Ev. 357,) that the rule, requiring proof, by the attesting witness, if he can be produced. "applies equally to all instruments which are attested." Again, he says, (p. 362,) if a deed, or other written instrument is attested, but none of the witnesses are capable of being examined, the course then is, to prove an attesting witness' hand writing."

These authorities, alone, establish the principle, conclusively, that, when the execution of an attested instrument, whether under seal or not, is properly in issue, the evidence of the subscribing witness, is, and has ever been, deemed the best, and only admissible evidence; unless the impracticability of producing it, be satisfactorily shewn; or, unless he be legally incompetent, from some cause, not chargeable as a fault, [against the party on whom the making the proof devolves.

Then, the question recurs, whether the subscribing witness, in this case, by means of the assignment to himself, was rendered incompetent, in a manner authorising the introduction of the secondary evidence, of either the signature of the witness, or of the maker—or, even the subsequent admission of the latter, that he executed the note. It will be observed, that if the subscribing witness was incompetent, at the time of his attestation, the same is to be regarded as a perfect nullity—the parties have designated no

witness—and the proof must, in all respects, be as if there had been nothing purporting an attestation. It will, also, be recollected that the nearest approach that the authorities make to this case, in authorising the secondary evidence, is, where the subscribing witness becomes administrator or executor of the obligee or payee: and, then it is allowed, only from necessity, and only for what it is worth : except, that, in the case of *the lessee of Hamilton* vs. *Marsden*, it was admitted, under peculiar circumstances, calculated to create strong predilection, in favor of the party offering it.

Surely, there is a wide and essential difference, between the acceptance of the general fiduciary appointment of the administration of an estate, (including the particular instrument,) for the benefit of the representatives, and a private contract, by assignment; for the ownership of the note, for the party's individual benefit. This plaintiff purports to have been a competent witness—assuring to the defendant, the highest grade of evidence, respecting the circumstances of the contract, and execution of the note, until the moment he exercised his private discretion, to do the very act, which, alone, renders it incumbent on him, to make the proof which he now wishes to do—by an inferior grade of evidence. Although the acceptance of an administration has been, and, in common parlance, may be called, voluntary--often, it is a strong moral duty; and, generally, the volition is entirely different from taking an indorsement of an instrument, in an individual contract. Nothing is more essential to the common rights of property, than the preservation, as far as practicable, of the evidence of contracts, in its ori-

ginal purity; nor should it ever be allowed to any party, by his own wrong, to vary the state of the evidence, for his personal advantage. This, *it is* presumable, this plaintiff will have done, if he be now permitted to avail himself of the secondary evidence, in question.

In *Johnson, assignee* vs. *Knight & Knight,*[a] in a special case, the jury stated, that the plaintiff was a subscribing witness to the bond, sued on, of which both the defendants acknowledged the execution— that one of them promised to pay it, and the other said he expected to have it to pay, and it would ruin him. The question was, whether this was sufficient proof of the execution of the bond. Justice, *Locke,* in delivering the opinion of the court, said, it had already been decided, in that court, and between the same parties, that it was improper to receive evidence of the hand writing of the subscribing witness, who was the plaintiff, and had taken a voluntary assignment of the bond in question. But, the cause was again submitted to the court to say, whether the acknowledgment of the defendant, that he had given such bond, and would pay it, is not legal and proper evidence, to be submitted to a jury, to prove its execution. This point, said he, was expressly decided, in the case of *Abbot* vs. *Plumb,*[b] and in *Cunliffe & Malby, his wife, and others* versus *Sefton and others.*[c] That, *Lawrence,* Justice, as late as 1802, in delivering his opinion in that case, repeats this, as a general principal of law : and, although the evidence of the subscribing witness may be dispensed with, in cases of marriage, or, in favor of executors or administrators, from necessity, and in furtherance of

[a] N. C. Law Repos. 93.

[b] Doug 216, 217

[c] 2 East. 187

justice; yet, he had been unable to find a single case, where it had been dispensed with, by reason of the subscribing witness becoming assignee. He was, therefore, of opinion, that the verdict ought to be set aside; and leave given the plaintiff to suffer a *non-suit.*[a]

I am, therefore, of opinion, that the judgment of the Circuit court must be affirmed.

[a] 1 Murph. R. 293; 1 Tyler's R. 4; 1 Starkie on Ev. 348, note 2.

LIPSCOMB, C. J.—I concur in the result—but from other reasoning, than that detailed in the opinion of my brother, *Saffold.*

TAYLOR, J.—not sitting.