# Woods *against* Ege.

A connected draft of a number of surveys, in the handwriting of a deputy of the deputy surveyor, who had executed the warrants and made some of the surveys, and which was found among the official papers of his principal, is not evidence of boundary in an action of ejectment for a part of the land included in one of the surveys made by him.

ERROR to the common pleas of *Cumberland* county.

Ejectment by Samuel Woods against Peter Ege and others. The defendants, on the trial of the cause, offered in evidence a connected draft of many tracts of land in the neighbourhood, as evidence of a boundary line of the land in dispute. On the subject of the draft the following evidence was given:

"Captain Ege. Benjamin Wallace was deputy of Samuel Lyon the regular surveyor; at least he acted in that capacity. He surveyed at Cumberland furnace, at Pine Grove, &c. I saw him often; and carried the chain when he surveyed. This general draft is very like his hand, and from inspection of it I believe it to be his handwriting. [Wallace is dead.] Samuel Lyon acted as the deputy surveyor of this county. Wallace told me he was employed by Mr Lyon. The name Wallace on these warrants I believe to be his hand.

[Woods v. Ege.]

"Warrants read (originals from deputy surveyor's office now produced).

"Jackson, Nodd, and indorsements. 'Executed by Benjamin Wallace, 3d of January 1794.'

"George A. Lyon, Esq. Samuel Lyon was deputy surveyor, (was my uncle). His son John Lyon left a trunk containing drafts, papers, &c., which I supposed to be the papers of the deputy surveyor. It still remains in my possession, but Dr Chambers inspected the trunk with my permission—found this draft and slip in it. The trunk contained his official papers, original field notes, surveys, drafts, &c. I don't know what were delivered over to his successor. He did not continue in office till his decease. Mr Ramsey was his successor—many papers were delivered over, and some not, I think—a suit was brought and judgment had for not delivering over the papers. I have had many searches made in the trunk by myself and by others. I understand B. Wallace acted many years as deputy surveyor of Samuel Lyon. Dr Chambers showed me the draft he found, and I think this is it.

"Dr Chambers. I got this out of the chest at the instance of Samuel Lyon, son of Samuel Lyon deceased; the chest was in the possession of George Lyon, Esq. There were a great many field books, notes, drafts, &c. in the trunk. I had this generally in possession until I handed it over to Mr Carothers. The parts of drafts offered, as designating the boundaries and locality of the lands in question. Objected to. 1. That it is not an official paper. 2. No authority shown by which it was made, nor to mark any boundaries or improvements. 3. It is secondary evidence, the original warrants and surveys being in existence and produced. The paper offered is admitted for the purpose stated—exception taken."

The only error assigned was the admission of this paper.

*Biddle* and *Williamson,* for plaintiff in error, cited, Biddle *v.* Shippen, 1 *Dall.* 19; Blackburn *v.* Holliday, 12 *Serg. & Rawle* 140; Farley et al. *v.* Lennox, 8 *Serg. & Rawle* 392; Penn *v.* Hartman, 2 *Dall.* 230; Wilson *v.* Stoner, 9 *Serg. & Rawle* 39; *Add. Rep.* 130; 1 *Peters's C. C. Rep.* 418.

*Watts* and *Carothers,* for defendant in error, cited,        *v.* Plumstead's Appeal, 4 *Serg. & Rawle* 545; Boyles *v.* Johnston, 6 *Binn.* 125; Vincent *v.* Huff, 4 *Serg. & Rawle* 299; Miller *v.* Carothers, 6 *Serg. & Rawle* 215; Kaufman *v.* Cedar Spring, 6 *Binn.* 69; Wolf *v.* Wise, 11 *Serg. & Rawle* 149; Hamilton *v.* Minor, 2 *Serg. & Rawle* 70.

The opinion of the Court was delivered by

KENNEDY, J.—The plaintiff in error was the plaintiff below in this case. It grew out of two actions of trespass *quare clausum fregerunt,* brought by him against the defendants, which, by agreement of the

[*Woods v. Ege.*]

parties, were converted into an action of ejectment, and as such, accordingly tried.

The plaintiff on the trial of the cause, in order to show his right to recover the possession of the land in controversy, gave evidence to the court and jury of a settlement and improvement made upon it in 1780, by a James Young, of a sale of the same by Young to Hugh and Henry M'Taggart; then of a sale by Hugh M'Taggart to Philip Graup, and again of a sale from Philip Graup to Samuel Woods, the plaintiff; who took out a warrant for the land in 1806, calling for the settlement and improvement, and for interest on the purchase money due to the state from March 1780; upon which he had a survey made in 1814, embracing four hundred and thirty-five acres, of which the land in dispute is a part.

The defendants then, to sustain their right to the land in question, gave in evidence three warrants, one in the name of Isaac Jackson, the second in the name of William Nodd, and the third in the name of Eli Canby, each for four hundred acres, as also office-copies of the surveys made thereon, which covered the land in dispute. These warrants were said to be a part of forty warrants taken out of the land office by David Watts, on the 24th of February 1794, all directed to Samuel Lyon, then deputy surveyor of Cumberland county. The defendants also gave in evidence certified copies of the application for the forty warrants, together with a receipt for the payment of the purchase money to the state, amounting to 430 pounds, and for 21 pounds 10 shillings fees. The surveys given in evidence appeared to have been made on the 3d of January 1795; some evidence was also given to show that M'Taggart, through whom the plaintiff claimed the land in dispute, and who was the owner of it as the plaintiff alleged at the time the defendant's surveys purported to have been made, which included the land, was present when the surveyor was running the lines of some of the surveys made under the forty warrants, but it did not distinctly appear that he was present at running any of the lines of the defendants' surveys, so far as they interfered with the plaintiff's survey, or the claim now made by him. There was also evidence given by the defendants that Benjamin Wallace acted as a deputy under Samuel Lyon, the deputy surveyor of Cumberland county, at the time the defendants' surveys were made, and that he was seen on the ground as the person actually employed in making the surveys under Buchannan's forty warrants. A connected draft of the forty surveys, and surveys of other lands adjoining said to belong to the owners of the Pine Grove furnace and Holly iron-works, without any date or explanation upon its face of the purpose for which it was made, was then produced. It was not shown that there were warrants or any other authority in the hands of the deputy surveyor for making the surveys of the lands belonging to Pine Grove furnace and Holly iron-works, as set forth in the connected draft; but some evidence was given of its being in the handwriting of Benjamin Wallace, and of

is having been found among some of the official papers of Samuel Lyon, the deputy surveyor, after his death; but when it was made, or for what purpose, did not appear. The defendants' counsel, after making this proof, offered to give the draft in evidence to the jury. The counsel for the plaintiff objected to it, but the court overruled the objection, and admitted it in evidence. This is complained of as error, and is the only thing that has been assigned as such by the plaintiff's counsel.

In order to decide correctly on the admissibility of this draft, it may be proper to observe that all the surveys made in pursuance of the forty warrants, had been certified and returned by Samuel Lyon, the deputy surveyor, into the surveyor-general's office. The corrected draft then cannot be considered the best evidence of the fact that surveys were made upon these warrants, because certified copies thereof from the surveyor-general's office, which were within the power of the defendants, were better evidence for this purpose. The admission of the draft, therefore, cannot be sustained upon the ground that it was the best evidence which the nature of the thing admitted of. But it is contended that after having given the primary evidence, it was competent to give secondary, and that as such the draft was properly admitted.

There may be cases, where surveys have been certified and returned by the deputy surveyor into the surveyor-general's office unfairly, that his field notes or other papers relating to a survey made by him, and found among the papers appertaining to his office, might be admissible for the purpose of impeaching the survey returned. Adams *v.* Goodlander, 2 *Yeates* 313. And upon this principle, it appears to me, the declaration of Wilson, the surveyor in the case of Kaufman *v.* The Cedar Spring Congregation, 6 *Binn.* 62, 63, made at the time he was actually engaged in making the survey on the ground, was properly given in evidence after his death, on the trial of the cause, to show that his principal, M'Clay, the *deputy* surveyor, by whom he was employed to make the survey, had acted improperly in curtailing and reducing the survey which he returned into the surveyor-general's office, from three hundred and thirty-two acres to two hundred and thirty-two acres, without the knowledge or consent of the warrantees: so that in effect it was given to impeach the survey which had been returned, and to establish title to land not included in it, but actually included and returned in a survey upon another warrant by M'Clay, the deputy surveyor. So where the return of a survey has been certified by a deputy into the surveyor-general's office, and the fact of its having been made on the ground is called in question by evidence given for that purpose; the field notes and original work of the deputy found in his office, together with evidence of corresponding marks of the work of a surveyor found upon the ground, might be given in evidence to corroborate and support the survey returned. But unless it be to impeach a survey, or to corroborate and sustain it after it has been assailed, I am

[Woods v. Ege.]

not aware that secondary evidence can be received to establish the fact of which primary has been given. Primary evidence unimpeached must be considered sufficient to answer the purpose for which it was admissible and given; and it would therefore be a useless waste of time to admit secondary, even if there were no other objection to it.

It has again been argued, that the connected draft in this case was admissible as evidence of boundary; that the declarations of Wallace, the surveyor who ran the boundary lines in making the survey, made by him at the time he was employed in doing the work, he being dead, would have been admissible; and that the connected draft made by him is at least equivalent to such declarations. In support of this, the decision of this court in Kaufman v. The Cedar Spring Congregation has been vouched. I have already shown that the declarations of Wilson in that case were admitted for the purpose of impeaching his principal, the deputy surveyor, who had acted unfairly towards the warrantees in altering their survey. But nothing of the kind is pretended in this case.

The declarations of tenants or occupants of land, so far as they relate to the tenancy or possession, have been and doubtless may be admitted as evidence; so the declarations of a person claiming land, or of those through whom he claims, made by them while they held the land, are likewise admissible. But then this is not upon the principle that the fact to be established is boundary, and therefore hearsay evidence may be received in regard to it. It is upon the ground that they are the admissions of a party against *his own interest,* which have ever been deemed evidence of the highest grade in law, and held admissible in both criminal and civil cases. 1 *Phil. Ev.* 197, *Dunlap's Ed.* In questions of boundary, where the public have an interest, as between parishes and the like, hearsay evidence is admissible. 1 *Phil. Ev.* 197, *Dunlap's Ed..* But it may be questionable how far the declarations of persons having no interest whatever in the land, shall be admitted to establish boundary between one person's property and that of another. Clothier v. Chapman, 14 *East* 330, 331, *note.* With respect to this, however, I do not wish to be understood as advancing any decisive opinion; it may be possible that, under some peculiar circumstances, such evidence would be admissible in case of private rights. But I have no hesitation in saying, that to admit the declarations of a deputy surveyor, or a connected draft made out by him, as evidence of the extent or boundary of a party's right to land, who never employed him to run his boundary lines, and for whom he never did such a thing, would produce the most crying injustice. For without having run or traced, in his official character, or otherwise if you please, the boundaries of the party under the direction of the party himself, how is he to have a knowledge upon the subject that ought to be credited more than that of any other person? It would, in effect, be to make the work of a deputy surveyor, or his declarations, evidence of a person's right, or

II.—ss

of his want of right, just as it might happen, although such deputy had never surveyed or run the lines of the person either for him or any one under whom he claimed.   It is not pretended in this case that B. Wallace was ever employed by M'Taggart to survey or run out the boundaries of his claim, nor is there any evidence, that I can perceive, that M'Taggart ever showed his boundaries to Wallace at any time.   It does not therefore appear that Wallace had any knowledge of M'Taggart's boundary, or that he ever possessed the means of knowing it; and hence there was not the slightest colour for admitting the connected draft in evidence upon the ground of its being the declaration of an artist who, in the course of discharging his official duty, had become acquainted with the fact.   Indeed it does not appear that Wallace had obtained a correct knowledge of M'Taggart's boundary in any way, and it would therefore be utterly repugnant to every rule of evidence, as well as justice, to admit in evidence his declarations respecting it.

It has in the last place been contended, that this connected draft was admissible evidence upon the score of its being an *official* paper, found among the official papers of Samuel Lyon, *the deputy* surveyor, under whom, it was proved, Benjamin Wallace acted in making the forty surveys for Buchannan.   The case of Miller *v.* Carothers, 6 *Serg. & Rawle* 221, is relied on as an authority in point.   The principle which seems to be established by that case, as well as some others, is, that if the paper appear to be the work of the deputy surveyor's official duty, and to have been found among his official papers, it may be given in evidence.   But it is not to be inferred from the fact of its being found among his official papers, that it must therefore be considered *official* also.   An authority as deputy surveyor, to do the act of which the paper purports to be an execution, must be shown.   Now the draft in this case purports to be a collection of adjoining surveys put together on paper, many of which, those at least of the Pine Grove furnace and Holly iron-works lands, for aught that appears, were made, if made at all, without any authority whatever; which, according to the principle laid down in Miller *v.* Carothers, is an insuperable objection to this part of the draft.   But it is said that it is sufficient to entitle it to be given in evidence, if it appear that that part of the draft which represents the relative situation of the claims of the plaintiff and the defendant in this cause was made under a proper authority, or that such authority was in the hands of the deputy surveyor at that time.   It may be answered, that this is begging a fact which does not appear to have been proved, and certainly is not conceded; which is, that this paper or draft was made out by Wallace at the time he was employed as the agent of the deputy surveyor in making the surveys under the forty warrants.   The draft is without date, and the evidence given of its first appearance does not reach within many years of the time when these surveys were made.   The time when it was made, as well as the object and purpose of making it, are left entirely to conjecture.   And we do know that such connected drafts are often

[Woods v. Ege.]

made out by deputy surveyors at the request of individuals for private purposes, which have no connection whatever with their official duty. And the very circumstance in this case of the draft in question having many tracts of land designated upon it, for surveying of which it does not appear that Samuel Lyon, the deputy surveyor, ever had any authority, affords strong, if not conclusive evidence, that it was made for some private purpose, and not in the discharge of his official duty. Indeed, it is certain, which is decisive on this point, that he had no authority to designate or survey M'Taggart's claim, which is set out on the draft. Hence I think it was *improperly* received in evidence.

Judgment reversed, and a *venire facias de novo* awarded.