68 36
198 419

# McCausland *et al. versus* Fleming *et al.*

1. In trespass *q. c. f.*, "not guilty" puts the plaintiff's possession in issue, which the defendant may disprove by proving his own ancient and continued possession of the *locus in quo*.

2. Pedigree and boundary are the excepted cases wherein reputation and hearsay of *deceased* persons are received in evidence.

3. Ancient maps - and surveys are evidence to elucidate and ascertain boundary and fix monuments.

4. No drafts when offered for title will be received except they bear an *official* character; and in this they differ from those offered to show *boundary*.

5. A party claimed to what was known as the "Taylor line." On the trial he offered a draft dated forty-five years previously, proved to have been in the possession of a former owner, who claimed by it thirty-five years before, and proved also to be the handwriting of Taylor, who was a surveyor, and was dead. *Held*, to be evidence of boundary.

October 29th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Armstrong county:* No. 147, to October and November Term 1869.

This was an action of trespass *q. c. f.*, brought May 15th 1867, by Lydia M. McCausland and others against William A. Fleming and others. The defendants pleaded "Not guilty" and "*Liberum tenementum.*"

It appeared from the history of the case by the plaintiff in error, that the plaintiffs owned a tract surveyed in 1784 to John D. Mercier, and the defendants owned an adjoining tract, surveyed in the same year to James Dundas; the question in dispute was the location of the line between these two tracts.

On the trial before Buffington, P. J., the defendants showed that the title to the land claimed by them had formerly been in John Montgomery; also, a deed from John Montgomery to David Devinney and James Montgomery, and from them by a regular chain of title to the defendants. They proved that John Montgomery, about 1833, had a survey made of his tract, and claimed to what the witness called the "Taylor line." A witness went on the land in 1833, having got a paper from John Montgomery purporting to be a draft of John Taylor's survey, and found the marked lines on the tract; there was evidence by other witnesses of marks on the Taylor line. David Devinney testified, that in 1833 he went on the land, and there was a marked line around the tract. The draft being shown to the witness, he said that he had received it from John Montgomery. Dr. Taylor, a son of John Taylor, being shown the draft dated in 1823, with the signature "John Taylor," testified "this was made by my father; the signature is his; he has been dead twenty years." The draft was then offered in evidence, and admitted by the court, against the objection of the plaintiff, and a bill of exceptions was sealed. The

[McCausland v. Fleming.]

verdict was for the defendants. The plaintiff took out a writ of error, and assigned for error the admission of the draft in evidence.

*E. S. Golden* (with whom were *J. B. Neale* and *J. Boggs*), for plaintiffs in error.—The draft was not made by Taylor in an official capacity, and therefore not evidence: Meehan *v.* Williams, 12 Wright.238 ; Wood *v.* Ege, 2 Watts 335 ; Blackburn *v.* Holliday, 12 S. & R. 140; Urket *v.* Coryell, 5 W. & S. 60; Sample *v.* Robb, 4 Harris 305; Kirkland *v.* Thompson, 1 P. F. Smith, 216; Bender *v.* Pitzer, 3 Casey 333.

*D. Barclay*, for defendants in error.—The draft was evidence to show the extent of the defendants' claim and possession: Aughenbough *v.* Johnston, 4 Yeates 317; Miller *v.* Keene, 5 Watts 349; Hoey *v.* Furman, 1 Barr 295; Cauffman *v.* Congregation of Cedar Spring, 6 Binney 59; Buchanan *v.* Moore, 10 S. & R. 275; Commonwealth *v.* Philadelphia, 4 Harris 79.

The opinion of the court was delivered, January 3d 1870, by

Agnew, J.—So far as the bill of exception to the admission of Judge Taylor's draft in evidence, might depend upon the state of the evidence, at the time of its admission, we have no means of testing its correctness, the evidence not being furnished. In the bill itself the purpose of the offer is not stated; so that if the draft be evidence for any proper purpose, it was rightfully received.

The action was trespass *vi et armis*, with the plea of *not guilty* as well as that of *liberum tenementum*. The plea of not guilty put in issue the plaintiff's possession, which the defendants had the right to disprove by proving their own ancient and continued possession of the *locus in quo*. This they endeavored to do by proving an ancient boundary line run by Judge Taylor, and a possession corresponding thereto. To identify clearly and locate this line they next offered Judge Taylor's own draft of survey of this boundary line. Preliminary to this, they proved by the testimony of Daniel Devinney, the possession of this draft (bearing date in 1823) in John Montgomery, a former owner of the land, under whom they claim title, as early as 1833, and that he was in possession of the tract claiming to this line. The handwriting of the draft was also proved to be that of Judge Taylor, who had been deceased twenty years. Under these circumstances the draft was clearly competent evidence, corroborative in its nature, of the extent of the defendants' possession: that is of the boundary of his possession. " A second exception (says Mr. Greenleaf, in his Law of Ev., vol. 1, § 141) to the rule rejecting hearsay evidence, is allowed in cases of ancient possession, and in favor of the admission of ancient documents in support of it. Care must be

[McCausland *v.* Fleming.]

taken (he continues) to ascertain first the genuineness of the document, and that it came from proper custody." That was done here by proving the handwriting of the deceased Judge Taylor, and the possession of the paper by the former proprietor, who would most probably have and be entitled to its custody. Then the document was fortified by proof of a line marked on the ground, bearing the ancient reputation of a survey made by Judge Taylor, and by evidence that the defendants claimed and held possession to and by this boundary.

Pedigree and boundary are the excepted cases, wherein reputation and hearsay of *deceased* persons are received as evidence. The statements of deceased persons relative to boundaries of which they spoke from actual personal knowledge, have been frequently received as evidence in this state: Cauffman *v.* Cedar Spring Congregation, 6 Binn. 62, 63; Buchanan *v.* Moore, 10 S. & R. 281; Bender *v.* Pitzer, 3 Casey 335. And ancient maps and surveys are evidence to elucidate and ascertain boundary and fix monuments: Penny Pot Landing, &c., *v.* City of Philadelphia, 4 Harris 91; Sample *v.* Robb, Id. 319. The distinction is stated by Coulter, J., in the last case, to be between drafts when offered for *title* and when offered for *boundary*. For the former purpose none but such as are shown to bear an *official* character will be received. These must be traced to the possession or office of the surveyor, and appear to have been made in an official character: Urkett *v.* Coryell, 5 W. & S. 79; Woods *v.* Ege, 2 Watts 336–7; Blackburn *v.* Holliday, 12 S. & R. 140. The question here being one of the possession and the extent of it by the boundary known as Taylor's line, the draft being properly proved and traced, was competent evidence to aid in ascertaining and identifying that boundary.

Judgment affirmed.