Judge Carr.
Gilliam and Perkinson, entered into written articles of agreement, by which Gilliam employed Perkinson as *326 his overseer. This agreement was witnessed by Charles A. Gilliam and Cannon Perkinson, the first writing his name, the last making his mark. The overseer and his employer disagreed, and the overseer sued on the agreement At the trial, it was admitted that Charles A. Gil-Ham, the witness who wrote his name, was a mulatto, and incapable of giving evidence; and that the other witness, who made his mark, was dead. The question was, whether the plaintiff should be permitted to prove the handwriting of the defendant to the agreement, without having first proved the mark of the deceased witness, or used due exertions to obtain such proof. The Court permitted proof of the hand-writing of the defendant, without laying any other ground for it than the death of the witness; and we are to decide whether this was error.
The general rule on this subject is, that if there be a subscribing witness to an instrument, his evidence is the best and must be adduced, if in the power of the party. But if the witness be dead, or blind, or insane, or infamous, or interested since the execution of the deed, or beyond the process of the Court, or not to be found after diligent enquiry; in all these cases (and others perhaps might be stated) the course is, to prove the hand-writing of the attesting witness. This is evidence, of every thing on the face of the instrument. The sealing and delivery will bo presumed; and it is laid down in many cases, that it will not be necessary to prove the hand-writing of the party to the deed. Other cases, however, have required such proof to connect the party with the instrument.
The latest case I have examined on the subject, is that of Nelson v. Wittal, 1 Barnew. & Ald. 19, decided in 1817; and there the question seems to be considered as not settled. Lord Ellenborough says, “ It has been the constant practice, in- eases where the subscribing witness is dead, never to look at any thing beyond proof of the handwriting of the witness, and I should think, that in all cases, it was prima facie evidence of the instrument having been *327 executed by the person whose name it boars. The ques-lion, however, may perhaps admit of some doubt.” Bayly J. says, “ It is laid down in Mr. Phillips’s Treatise on the Law of Evidence, that proof of the hand-writing of the attesting witness, is in all cases, sufficient. I always felt this difficulty, that, that proof alone, does not connect the defendant with the note.- If the attesting witness himself gave evidence, he would prove, not merel}’ that the instrument was executed, but the identity of the person so executing it; but the proof of the hand-writing of the attesting witness, establishes merely that some person assuming the name which the instrument purports to bear, executed it; and it does not go to establish the identity of that person; and in that respect, the proof seems to me, defective.” Abbott, J. seemed to think proof of the handwriting of an attesting witness sufficient, and as one reason for his opinion, states, that if it had been necessary in ancient deeds, to prove, besides the hand writing of an attesting witness, that of the party also, a great difficulty would have arisen; for, in those times, the parties seldom wrote, but merely fixed their marks, “ which would scarcely be distinguishable from one another.” If there be no subscribing witness, or he denies having any knowledge of the execution, or the name of a fictitious person is in serted, or if, after diligent, enquiry, nothing can be heard of the witness, so that he can neither be produced, or his hand-writing proved, tho execution of the instrument may be established by proving the hand-writing of the party, or his admission, that he executed it. While I acknowledge it to be the rule, that pi’oof of the hand-writing of the attesting witness, is considered better evidence of the execution, than proof of the hand-writing of the party executing, I am free to confess, that I think it a rule founded rather in technical strictness, and artificial reasoning, than in sound good sense. When I see the name of a person, with whose hand-writing I am well acquainted, signed to an instrument, as a party, it gives ranch stronger assu *328 ranee to thy mind, that he executed it, than I should feel from the mere knowledge of the hand-writing of an attesting witness. This last, seems to be one remove further from certainty. The witness may have honestly attested what he believed to be the fact, and yet be deceived by the obligor’s assuming a name which he did not bear; or the witness may have knavishly signed his name, knowing that the person, whose name the instrument bears, never executed it. But, when we see the name of the obligor affixed to the bond, and know that it was written by himself, it is so difficult to account for its being there, except by his executing the writing, that the mind can feel little doubt of the execution. This has always been my opinion of this rule, and I am pleased to find it corroborated by such good authority as the Supreme Court of Pennsylvania, consisting of Tilghman, Yates and Brackenridge, in Clark v. Sanderson, 3 Binn. 192; Chief Justice Spencer, in Hall v. Phelps, 2 Johns. Rep 451; and Chief Justice Parker, in Homer v. Wallace, 11 Mass. Rep. 309. I do not mean that they all concur on the exact point of hand-writing. The first three do; and the other two are equally in favor of relaxing the rigor of the old rule.
In the case before us, however, I consider no relaxation of the rule required, to support the judgment of the Court below. The attesting witness, being dead, the first call would be for proof of his hand-writing; and wherever that could not be had, the hand-writing of the party might be proved. Whether this inability proceeded from fortuitous circumstances, or the very nature of the transaction, would be immaterial. In the case before us, the witness has made his mark. Now I ask, how could this be proved ? There is a distinct, individual character, in the hand-writing of every man who can write; and with those who have written much, that character is so fixed and striking, that persons acquainted with it, will feel no more difficulty ih recognizing it, than in knowing the face of the writer. *329 Where the name óf a witness is written by himself, therefore, it may generally be proved with something like certainty. But here, there was no writing. The name of the witness is written by another; and he makes a cross mark; perhaps, the first, and the last, he ever made in his life. To attempt to prove such a signature as this, would be a mockery of justice; and the Court, seeing this, did right in allowing the hand-writing of the party to be proved. I am for affirming the judgment;
The other Judges concurred, and the judgment was affirmed.*