JAMES LANDERS, AND SARAH LANDERS HIS WIFE, *v.* JAMES R. BOLTON.

CONVEYANCES NOT ACKNOWLEDGED.—Conveyances of real estate, (except such as are required to be executed by married women,) as between the parties to them, are valid and pass the title without being acknowledged or recorded.

SAME.—Such conveyances, if acknowledged as required by law, are admissible in evidence without further proof; but if not so acknowledged, must be proved according to the ordinary rules of law applicable to the subject.

CONVEYANCES BY MARRIED WOMEN. — Conveyances required to be executed by married women are not valid, nor do they pass any title, nor can they be used in evidence, unless acknowledged in the manner prescribed by law.

SUBSCRIBING WITNESSES TO A CONVEYANCE.—Where a conveyance, not acknowledged, is offered in evidence, and it is proved that it was executed by the grantor and witnessed by subscribing witnesses out of the State, and there is no evidence to show that the subscribing witnesses were ever in the State, a sufficient presumption is raised that the subscribing witnesses are not within the jurisdiction of the Court to let in secondary evidence of its execution by the grantor.

HANDWRITING OF SUBSCRIBING WITNESS.—When the subscribing witness to a written instrument is beyond the jurisdiction of the Court, such instrument is admissible in evidence upon proof of the signature of the grantor or obligor, without proving the handwriting of the subscribing witness, unless the instrument is one which the law requires to be attested by witnesses, in which case proof of the handwriting of both parties and subscribing witnesses might be necessary.

COPIES OF INSTRUMENTS RECORDED AS EVIDENCE.—Copies of instruments of those classes entitled to record, duly certified by the Recorder, which were copied into the proper books of record of the proper county, prior to April 30th, 1860, are admissible in evidence under the statute, after proof that the originals are not under the control of the party offering such certified copies, or are lost, and that the originals were genuine instruments, and were in truth executed by the grantor or grantors therein named, notwithstanding such instruments were irregularly recorded by reason of some defect, omission, or informality existing in the acknowledgment or certificate of acknowledgment of the same.

RECORD OF INSTRUMENTS AS NOTICE.—Instruments, in the acknowledgment or certificate of acknowledgment to which there was a defect or omission, and which

Points decided.

were copied into the proper book of record in the proper county prior to the 30th day of April, 1860, impart to purchasers and incumbrancers becoming such after said date, notice of their contents, the same as though the acknowledgment and certificate had been in due form of law.

ERROR NOT PRESUMED.—The presumptions of law are all in favor of the correctness of the judgment of the Court below. Error will not be presumed, but must be shown affirmatively.

DENIAL OF ALLEGATION IN SWORN PLEADINGS.—An allegation in a sworn answer that "on the 24th day of March, 1862, the said French and Robinson, by deed duly executed, acknowledged, and recorded, conveyed said premises to this defendant for the sum of seven thousand seven hundred and fifty dollars," is not denied by a statement in the replication that "the plaintiffs further deny that said French and Robinson, or either of them, conveyed said premises to the defendant for the sum of seven thousand seven hundred and fifty dollars, or for any other sum." Such denial is a mere denial that French and Robinson conveyed the premises, without denying the facts which constitute the conveyance; besides, it does not deny the conveyance—the material fact—but only a conveyance *for a consideration.* Under such denial the party making the averment is not required to offer his deed in evidence on the trial. The allegation of the answer is deemed admitted under the provisions of the statute.

POSSESSION UNDER UNRECORDED DEED NOTICE OF TITLE.—One who purchases and obtains a conveyance of land, at the time in the open and notorious possession of another who has a prior deed not acknowledged or recorded, executed by the same grantor, is not a *bona fide* purchaser. The possession of the one having the older unrecorded deed is notice of his title.

JUNIOR PURCHASER MUST BUY IN GOOD FAITH AND WITHOUT NOTICE.—In a suit to try the title to land between two who are purchasers from the same grantor, where the oldest deed is neither acknowledged or recorded, the one claiming under the prior unacknowledged and unrecorded deed will prevail, unless the fact appears that the second purchaser bought without notice for a valuable consideration. It is not sufficient for the second purchaser that there is no finding of fact or evidence on the subject, but the fact must be made to appear affirmatively.

POSSESSION OF TENANT.—The possession of a tenant is notice of the title of his landlord.

DEED TO MARRIED WOMAN.—A deed of land to a married woman which shows upon its face the payment of a money consideration is *prima facie* evidence that the land conveyed thereby is the common property of the husband and wife, and subject to the absolute control and disposition of the husband.

EVIDENCE OF TITLE IN A PERSON NOT A PARTY TO THE ACTION.—In an action in which plaintiff claims title to land under a deed executed by a married woman to him, if the deed to such married woman, the grantor, shows upon its face the payment of a money consideration for the land, the defendant may introduce in evidence a prior deed made by the husband of said married woman, the grantor, to a person not a party to the action, to show that nothing passed by the deed from the wife to plaintiff.

*Query ?*—Does the record of a deed, executed by the grantor by his attorney in fact, which is duly acknowledged and recorded, impart notice without a record of the power of attorney ?

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Bennett & Love,* for Appellants.

A possessory title alone is sufficient to sustain this action. Possession alone is required by the statute. (Sec. 254 of Prac. Act.)   This the plaintiffs had, and this is sufficient to give them a standing in Court.

Unless, then, the defendant Bolton has shown some superior title, the plaintiffs ought to maintain their action.   The only way in which Bolton could show a superior title was by deducing from Maria B. Gimmy to himself a better right than the plaintiffs possess; for Maria B. Gimmy is admitted to have been the owner in fee in the year 1850.

The defendant claims through a power of attorney pretended to have been executed by Maria B. Gimmy, who is admitted to have been the owner of the lot, to John G. Gimmy.

In relation to this power of attorney, we say : First—The power of attorney, even though it had been proved to have been executed, is a nullity.

It is not acknowledged as required by statute.   (Wood's Dig. p. 100, Arts. 338, 340–344, 347, 358, 361, 363, 364.)

Our statute respecting conveyances and their acknowledgment is essentially different from the statutory provisions of those States in which it has been held that a deed was good between the parties, though insufficiently acknowledged.

The statute of New York (1 R. S. 731, Sec. 137,) provides that "every grant in fee, or of a freehold estate, shall be subscribed and sealed by the person from whom the estate or interest conveyed is intended to pass, or his lawful agent."

Now the language of the New York statute, in respect to "signing and sealing," is no stronger than our statute in respect to "acknowledgment;" and yet no one would doubt

that under the New York statute, both signing and sealing are indispensable requisites to a deed conveying real estate.

By parity of reasoning, equally indispensable is an acknowledgment under the statute of this State.

The statute of our own State, like the statutes of all the States, requires certain formalities to be complied with in the conveyance of real estate by married women—such as an acknowledgment separate and apart from their husbands, etc.

It is unnecessary to cite authorities to establish the position that, as a general proposition, an instrument executed by a married woman would not operate as a conveyance, unless the requirements of the statute are strictly complied with. The very point is decided in *Selover* v. *American Russian Com. Co.*, 7 Cal. 266 ; *Kendall* v. *Miller*, 9 Cal. 591 ; *Pease* v. *Barbiers*, 10 Cal. 436 ; *Morrison* v. *Wilson and Wife*, 13 Cal. 494 ; *Mott* v. *Smith*, 16 Cal. 556.

All these decisions go to this one point : that where a statute requires any particular formality in the execution of an instrument conveying real estate, or where the statute requires the acknowledgment of a deed to be taken before a particular officer, the instrument does not pass the title to the real estate sought to be conveyed, unless, in the one case, the formality be complied with, and in the other case, the acknowledgment be taken before the proper officer.

Now, no statute can be expressed in stronger language than is used in section three of the Act concerning conveyances : " Every conveyance in writing, *whereby any real estate is conveyed or may be affected, shall be acknowledged* or proved, and certified in the manner hereinafter provided."

And all the other sections of the same Act, by the language used, go to corroborate the construction of section three for which we contend.

In corroboration of our position, we cite the cases of *The Lessee of Christian Good* v. *Elizabeth Zercher*, 12 Ohio, 364, *Meddock* v. *Williams*, Id. 377, and 13 Ohio, 143, and 14 Ohio, 431.

The authorities all sustain, in unequivocal language, the

position which we occupy ; that is, they insist, when a statute is peremptory, it must be obeyed—that when it says a thing " shall " be done, it must be done ; that when it says " every conveyance   *   *   *   whereby any real estate is conveyed or may be affected, shall be acknowledged   *   *   *   in the manner prescribed," such conveyance must be acknowledged in the manner required, and if it be *not* so acknowledged, then no title passes.

The counsel opposed cited Swan's Digest of the Ohio Statutes, and the citation only confirms our position. For the language of that statute is by no means so positive and imperative as the language of our own statute ; and yet the Ohio decisions hold that unless the statute be strictly *complied* with, *no title passes*.

The Court well understands that at common law all conveyances of real estate were made without writing. Livery of seizin was then the only formality to be observed. Real estate, like personal property, was transferred by parol. But, it was found that this laxity of proceeding opened the door to fraud, and other inconveniences, rendered the titles to real estate insecure and difficult to be ascertained, and had a tendency to prevent the transfer of real property from man to man, and therefore the Legislature interfered for the purpose of compelling transfers of land to be made in the regular and formal manner pointed out by statute.

At first, the English Parliament simply required deeds conveying real estate to be signed and sealed. Our statutes, as well as the statutes of all the other States, and even of England at the present day, have gone much further, and required a conveyance of real estate, not only to be in writing and under seal as a general thing, but also to be acknowledged before some competent officer. And we might as well say that we can waive the statute entirely, and go back to the old common law mode of transferring land by parol and livery of seizin, as to contend that we can waive any one part of the express and positive requirements of the statute.

The counsel opposed has said that every contract is good

and valid between the parties. We say it is not, when the statute requires in precise terms that such contract shall be executed in a particular way, *or before a given officer*, and it is not executed in such way or before such officer.

In illustration of our position we have cited *Mayham* v. *Coombs et al.*, 14 Ohio, 428, 431. The case last cited arose upon the construction of the Ohio statute, which uses the same imperative language with our own. The language of the Ohio statute is that " mortgages shall take effect from the time they are recorded." The Court holds that a mortgage has no effect even as between the parties, until the same shall have been recorded—just as we claim that a deed or power of attorney has no effect unless it has been acknowledged before the officer prescribed by the statute.

We have been unable to find any decisions in our State which have settled this point in opposition to our views. There are some dicta looking that way, but nothing which can be considered as binding on this Court on the principle of *stare decisis*, or which ought to preclude the Court from taking it up and determining it as a new question. (*Selover* v. *Am. Russ. Co.* 7 Cal. 266 ; *Kendall* v. *Miller*, 9 Id. 591 ; *Pease* v. *Barbiers*, 10 Id. 436 ; *Morrison* v. *Wilson and Wife*, 13 Id. 494 ; *Mott* v. *Smith*, 16 Id. 556.)

But even conceding that we are wrong on this point, we then contend further : That no power of attorney from Maria B. Gimmy to John G. Gimmy was *proved*.

The original was not produced. It became necessary, then, to prove it, if at all, according to the established rules for proving documents by secondary evidence. The counsel endeavored to prove it by secondary evidence, but signally failed.

The rules are well settled that where there is a subscribing witness to a *sealed* instrument, the order of evidence is as follows, to wit :

1st. The witness must be produced if practicable.

2d. If he cannot be produced it must be proved that he is

dead, or out of the State, or that vigorous and zealous efforts have been made to find him.

3d. After the above proof has been given, then his handwriting may be proved.

4th. If proof cannot be given of his handwriting, it must be shown that due diligence has been used to procure such proof.

5th. After all these stages have been gone through with, then, and not till then, may proof be given of the handwriting of the party.

The above rules will be found in *Jackson* v. *Waldron*, 13 Wend. 178, 180, 183, 196–200. And see particularly the opinion of Senator Tracy, commencing on page one hundred and ninety-six; and the opinion of the Chancellor in the same case agrees with Senator Tracy. (See also *Pelletreau* v. *Jackson*, 11 Wend. 111, 123–4.)

*Losee* v. *Losee*, 2 Hill, 609, *et seq.*, shows the reason of the rule—which is, that evidence may be given of subscribing witness' bad character, to overcome the legal conclusions deducible from the fact of his being a subscribing witness.

*Jackson* v. *Wager*, 5 Cow. 283, shows that both subscribing witnesses must be accounted for. (See, also, to same point, *Jackson* v. *Cady*, 9 Cow. 140.)

The counsel opposed may cite in connection with his answer to this branch of our argument, Greenleaf's Evidence, 575. But Greenleaf cites no authority whatever for one portion of the question under consideration, and for the rest nothing but a case in 22 Pickering, p. 90. Greenleaf's law may possibly be Massachusetts law, though that is very doubtful. But in this State we have adopted the common law, and that is the law which the New York cases cited are based upon and enforce. The question, then, comes down to this : Which set of authorities are the best and most accurate exponents of the common law of England—the case in 22 Pickering, and Greenleaf, or the well considered cases in the New York Reports above cited by us? We say, by all means, the latter.

Besides, the case in Pickering, on which Greenleaf relies, is altogether different from ours, and is not a case in point.

We claim that the proof of the power of attorney was defective in the following respects:

1st. The non-production of the witnesses was not accounted for. Showing that they were out of the State ten or twelve years ago, was wholly insufficient under the circumstances of this case. Inquiries should have been made for them here, within the jurisdiction of the Court.

2d. No effort was made to prove the handwriting of either of the subscribing witnesses. This is absolutely necessary, as the authorities cited prove beyond question.

3d. A tenant may show not only that his landlord's title has terminated, but that his attornment was made through mistake or fraud. Landers' agreement with Mead and Robinson, by which he undertook to pay rent to them, was made through mistake, at least, if not through fraud. The mistake was that Landers supposed that Mead and Robinson were the real and legal owners of the premises, when, in truth, they had no right, title, or interest in or to such premises.

The following authorities illustrate our position: Taylor's Landlord and Tenant, pp. 493–496, Secs. 705–707; *McDevitt* v. *Sullivan*, 8 Cal. 596; 8 Barn. & Cres. 471; 15 Eng. C. L. 234; Chitty on Contracts, 295, 296; 6 Taunton, 202; 11 Vt. 323, and note; 1 Bing. 38, 390; 6 Tenn. 682; *Jackson* v. *Newton*, 18 J. R. 355; *Jackson* v. *Cureder*, 1 Johns. 353.

*Daniel Rogers*, for Respondents.

Before the tenant can set up any claim to the premises, he must first surrender the possession. This cannot be avoided by the fact that the appellants were in possession at the time they accepted the lease. If the tenant was not induced by fraud or mistake to accept the lease, he cannot resist a recovery of the premises, much less avail himself of such a possession to support an action to quiet title. Without proof of fraud or mistake, the lease, although made to the lessee while

in possession of the premises, is followed by all the incidents of a lease under which the lessee goes into possession. This rule, than which none is better established, which prevents the tenant controverting the title of his landlord, applies as well when that title is legal or equitable, perfect or imperfect. (*McKune* v. *Montgomery*, 9 Cal. 576; *Cooper* v. *Smith*, 8 Watts, 540; *Tendro* v. *Cushman*, 5 Wis. 279; *Ingraham* v. *Baldwin*, 5 Sel. 45; *Thayer* v. *The Society of United Brethren*, 8 Harris, 60.)

The appellants are also estopped from denying the respondent's title, by reason of their being parties to the foreclosure proceedings instituted by the vendors of the respondent.

The appellants cannot now, in a suit brought to recover the property by the vendee of the purchaser under a decree of foreclosure and sale of mortgage premises, set up defenses which they failed to urge in the original suit. Having submitted to those proceedings in silence, the parties defendants (the appellants here) to that suit cannot now be heard to impeach the title which resulted from them. Landers being the mortgagor, in an action for the recovery of the premises would be estopped from denying that he had title at the time of the execution of the mortgage, nor could he be permitted to set up title in a stranger. (*Redman* v. *Bellamy*, 4 Cal. 247; *Jackson* v. *Hoffman*, 9 Cow. 271; *Barber* v. *Harris*, 15 Wend. 615.)

After foreclosure and sale under a decree for that purpose, the mortgagor is estopped setting up an after acquired title against the purchaser who was the mortgagee, and those claiming under him. In the present case, the mortgage given by appellant was not upon any particular estate, nor on any right thereto, but was upon the property. This Court has decided, in *Clark* v. *Baker*, 14 Cal. 609, that the thirty-third section of the Act concerning conveyances applies to mortgages equally as to conveyances.

51

*Sharp & Lloyd,* also for Respondents.

Suppose Maria B. Gimmy had the title when she made the deed to Anna M. Gimmy, then whatever passed by that deed, having been acquired by purchase during coverture, would have vested as the common property of Anna M. Gimmy and her husband John G. Gimmy, and he would have had a right to dispose of it as he did to McCarty on the 1st of March, 1861. This would have left nothing to pass by the subsequent deed from Anna M. Gimmy, April 8th, 1862, to Sarah Landers. (*Mott* v. *Smith,* 16 Cal. 533; *Pixley* v. *Higgins,* 15 Cal. 127.)

But, say appellants, this cannot avail respondent unless he connects himself with McCarty's title. We reply, that the question here is not who has the best title, appellants or respondent, but simply whether appellants have the legal title and should be quieted; whether, in fact, the allegations of their complaint are true.

Moreover, if McCarty became entitled, and nothing passed to Sarah Landers, neither she nor her husband have any right to complain or seek any relief, and thus, having no privity with the title, cannot question the mesne conveyances under which respondent claims. (*Rix* v. *Reed,* 19 Cal. 576.)

Appellants are not in position to question the title of respondent to the premises in controversy, but are forever estopped to deny the same.

First—Because of the tenancy; the law is so plain and well settled we deem it unnecessary to cite authorities to the effect that the tenant cannot dispute the title of his landlord.

As before observed, there is nothing in the record tending to show any fraud or imposition by any person upon appellants, or either of them, in connection with the lease or tenancy, or that the title had passed out of respondent. They both occupied the premises under it, and according to their sworn allegations in the complaint, made improvements upon the property with their joint funds. Besides, the leasehold interest they held was their common property, and she, equally with her

husband, was bound by the lease as tenant, and, equally with him, estopped from disputing the title of respondent.

Second—Appellants are estopped by the decree of foreclosure and the Sheriff's deed in execution thereof.

That both are estopped from setting up an outstanding title during the life of the mortgage, we think has been well settled in this State. (*Clark* v. *Baker*, 14 Cal. 626.)

By the Court, SAWYER, J.

This appeal is from a judgment dismissing the complaint in an action to quiet title, and from the order denying a new trial. The facts found by the Court below are amply sufficient to justify the judgment, and, unless some error appears from the statement to have been committed, which entitles the plaintiff to a new trial on the issues of fact, the judgment must be affirmed.

The plaintiffs claim title in the wife. It was admitted by the parties that on December 6, 1850, title in fee simple to the premises in question was in one Maria B. Gimmy. Plaintiffs proved occupancy by themselves since 1852; that they erected the improvements on the land; that the value of the premises is from twenty thousand dollars to twenty-five thousand dollars; that Maria B. Gimmy on the 23d of January, 1857, executed a conveyance of the premises to Anna M. Gimmy, who was then the wife of John G. Gimmy, for the consideration, as expressed in the deed, of one thousand dollars; that on the 10th day of March, 1862, (about a month before the commencement of this suit,) said Anna M. Gimmy (who had then been divorced from her husband, John G. Gimmy,) executed in favor of the plaintiff, Sarah Landers, a conveyance of the said premises, purporting to be a gift, and then rested. The defendant offered testimony to show, and the Court found the following facts: First, title in Maria B. Gimmy, as before stated; Second, the execution of a power of attorney by Maria B. Gimmy, in the State of Pennsylvania, on the 3d of February, 1852, to her son, John G. Gimmy,

authorizing him to sell and convey said lands—said power of attorney being witnessed, but not duly acknowledged or proved so as to entitle it to record; Third, a sale and conveyance on July 15, 1852, from Maria B. Gimmy by her said attorney, John G. Gimmy, under said power to Joseph L. Reed for twelve hundred dollars; Fourth, an attachment suit in the Superior Court of San Francisco, commenced August 6, 1852, by John W. Robinson and Stephen Mead against said Reed; Fifth, a judgment in said suit August 17, 1852, for seven hundred and seventy-six dollars; Sixth, execution on said judgment and sale of said premises thereon to said Robinson and Mead, and March 12, 1853, a Sheriff's deed to Robinson and Mead in pursuance of said sale; Seventh, March 15, 1853, a sale and conveyance by Robinson and Mead for two thousand dollars to said James Landers, one of the plaintiffs, who (Eighth,) at the time of said sale was, and who had been for a year prior thereto, in the actual occupancy of said premises; Ninth, at same time a mortgage back by said Landers to said Robinson and Mead to secure said two thousand dollars purchase money; Tenth, December 30, 1856, a suit commenced in the Twelfth District Court by said Robinson and Mead against said plaintiffs and others (Maria B. Gimmy not being made a party) to foreclose said mortgage, and a decree for foreclosure and sale entered therein January 5, 1858, for three thousand seven hundred and ninety-six dollars; Eleventh, January 30, 1858, a sale of said lands by the Sheriff under the decree to Robinson and Mead for four thousand three hundred dollars, and a Sheriff's deed thereon to Robinson and Mead September 2, 1858; Twelfth, a continued occupancy by Landers of said premises till the execution of said Sheriff's deed last named, at which time he entered into an agreement with Robinson and Mead at a specified monthly rent, to occupy thereafter as their tenant, and under such agreement continued to occupy said premises as tenant of said Robinson and Mead, and their grantees paying the stipulated rent till about the month of March, 1862, when said Landers for the first time repudiated the title of said Robinson and Mead and set up title in said Sarah Lan-

ders; Thirteenth, November 1, 1861, a conveyance by said Mead of his undivided half to Joseph M. French, and on March 20, 1862, a conveyance by said French and Robinson to defendant, Bolton; Fifteenth, March 6, 1861, a conveyance of said premises by John G. Gimmy, still the husband of Anna M. Gimmy, but pending a suit for divorce, to William McCarty for a consideration expressed of three thousand dollars.

Upon these facts the title is clearly in defendant Bolton. We do not understand that this proposition is seriously controverted. But it is insisted that the testimony upon which the second finding is based was improperly admitted, and if admissible, that it is insufficient to sustain the finding. The power of attorney from Maria B. Gimmy to John G. Gimmy was not acknowledged before a proper officer, and for that reason it was not regularly recorded. The acknowledgment being void, it is contended that the instrument is a nullity, and conferred no power whatever on John G. Gimmy to convey the land, and various provisions of the "Act concerning conveyances" are cited to sustain this view.

We have carefully examined the several sections of the Act, and are satisfied that a conveyance, as between the parties to it, is valid, and passes the title without acknowledgment or record. And this was the opinion of the Court in *Ricks* v. *Reed*, 19 Cal. 553. The acknowledgment is only the mode provided by law for authenticating the act of the parties, so as to entitle the instrument to record and make it notice to subsequent purchasers, and to entitle it to be read in evidence without other proofs. If purchasers neglect to have their deeds properly authenticated and recorded, they will be liable to have their title divested by subsequent conveyances to innocent parties, and to the further inconvenience of being compelled to prove their execution when called upon to put them in evidence. By sections ten, eleven, fourteen, and other sections of the Act, the execution of the conveyance may be proved by the subscribing witnesses, and when the subscribing witnesses are dead or cannot be had, the end may be accomplished by proving the handwriting of the party and of the

subscribing witnesses by other witnesses; and upon such proof the officer may make his certificate thereof, and the instrument thereafter becomes entitled to record and to be read in evidence without further proof; and this may be done years after the actual making of the deed, and even after the parties and witnesses to it are dead. If the theory of the appellant is correct, the instrument is an absolute nullity until it is proved, but upon proof *ex parte* by witnesses, without any further act of the party, and wholly independent of his volition, and even against his will, a conveyance is created. And a conveyance may be created for him, by a proper officer and competent witnesses, long after he is dead, out of a paper void when it passed beyond his control. So also a party might call the subscribing witnesses and fully prove an unacknowledged deed in Court, and the Court would, upon the appellant's theory, be compelled to rule out the deed on the ground that it was a nullity; but the Judge, having heard the testimony, might annex his certificate thereto, and it would at once become a deed, and upon such certificate be admissible in evidence without further proof. It seems to us that the appellant's construction would lead to absurd results.

Section thirty-one provides that neither the certificate of acknowledgment, or of proof, shall be conclusive, but may be rebutted; and section thirty-two, that if it shall be made to appear " that any such proof was taken upon the oath of an incompetent witness, neither such conveyance or instrument, nor the record thereof, shall be received in evidence *until established by other competent proof.*"

In such a case the certificate of acknowledgment or proof upon rebutting the *prima facie* case becomes a nullity, as being false or unauthorized, and the deed stands as if there was no certificate. But the deed is nevertheless good under the Act, and when " established by other competent proof," is authorized to be received. It is apparent from these several provisions of the Act, that the deed exists as a valid instrument without any acknowledgment or proof; but to entitle it to record, or to be read in evidence without further proof, it must

be authenticated in the mode prescribed.   (See, also, Sections
18, 29.)   It would be singular indeed if the Legislature should
provide that certain proofs made *ex parte* and certified by any
one of a large number of officers, should be sufficient to author-
ize an instrument in writing to be read as evidence of a con-
veyance of land, while the same proofs made in open Court
on the trial of a cause, with the benefit of cross examination,
should be insufficient.   The question, in our opinion, is one of
preliminary proof.   If acknowledged or proved in pursuance
of the statute, the instrument is admissible without further
proof.   If not, it must be proved according to the ordinary
rules of law applicable to the subject.

The view we have taken accords with the legislative con-
struction of the Act, as manifested in the supplementary Acts
of 1860 and 1863.   (Laws of 1860, p. 357; Laws of 1863,
p. 760.)   The Act of 1860, section one, provides, that "all
instruments of writing now copied into the proper books of
record of the office of the County Recorders of the several
counties of this State shall, after the passage of this Act, be
deemed to impart to subsequent purchasers and incumbran-
cers, and all other persons whomsoever, notice of all deeds,
mortgages, powers of attorney, contracts, conveyances, or
other instruments, so far as, and to the extent that, the same
may be found recorded, copied or noted, in the said books of
record, notwithstanding any defect, omission or informality
existing in the execution, acknowledgment, certificate of
acknowledgment, recording, or certificate of recording the
same; *provided,* that nothing herein contained shall be con-
strued to affect any rights heretofore acquired in the hands of
subsequent grantees or assignees."

Here the Legislature assume that the instruments referred
to are valid as between the parties to them, notwithstanding
their defects, and provide that the records of such defective
instruments shall, nevertheless, thereafter impart notice to all
other persons whomsoever of their contents.   And section
two provides, that certified copies shall be admissible in evi-
dence upon the same terms as other instruments duly executed

and recorded, upon proof being made that the originals "were genuine instruments and were in truth executed by the grantor or grantors therein named."

With respect to the conveyances by married women in this and other States, referred to by counsel, a different policy prevails. For the purpose of protecting her against fraud, coercion and undue influence of any kind, the acknowledgment of the wife is made a part of the deed itself, or perhaps more properly speaking, an indispensable part of the evidence of its execution. To secure perfect freedom of action, the wife must be examined separate and apart from her husband, and even at the last moment the right of retracting is secured to her. It must appear in the certificate of acknowledgment that she stated that she did not wish to retract. In her case, the certificate cannot be made, as in others, upon proof by subscribing, or other witnesses. The acknowledgment in person before the proper officer, and his certificate in the form prescribed by law is the only evidence admissible that she ever executed the instrument. All other proof in Court or out is incompetent. For these reasons the cases cited by appellants' counsel relating to conveyances by married women are inapplicable.

The next objection is, that the execution of the power of attorney from Maria B. to John G. Gimmy was not legally proved. The original was not produced. It appeared from the testimony that there were two subscribing witnesses, neither of whom was produced. It is contended that no sufficient diligence was shown to find and produce the subscribing witnesses—or, if the non-production of the witnesses is sufficiently accounted for, that it was necessary to prove their signatures, or show that it was impracticable to do so, before it was competent to prove the signature of the party to the power of attorney by other witnesses. John G. Gimmy testifies that Maria B. Gimmy, the grantor in the power, is his mother; that at the time of the execution of the instrument, in 1852, she resided at Bethlehem, in the State of Pennsylvania; that he had the power of attorney drawn up by Mr. Moore, an attorney in San Francisco, and sent it to her for

execution, at Bethlehem, by mail; that it was returned to him by mail, executed; that it had two subscribing witnesses; that one of them was known to him to be a citizen of Bethlehem, Pennsylvania, who had never lived in this State, but he did not know his signature; that the other was unknown to him; that he did not know that either of them had ever been in California; that there was but one power of attorney, and that he gave it to Joseph L. Reed. Moore testified that he drew a power of attorney for Gimmy, to be sent to his mother for execution; and Reed that he received such an instrument from Gimmy, and had it recorded in the Recorder's office. It appeared from the record of a similar instrument produced from the Recorder's office that the instrument purported to have been executed and acknowledged before a Justice of the Peace at Bethlehem, Pennsylvania; that there were two subscribing witnesses, the Justice himself being one; that it also had the certificate of the Prothonotary of the County of Northampton, under seal, to the official character of the Justice. It did not appear that any subpœna had been issued for these witnesses, or that any effort had been made to find them in San Francisco, where the trial took place, or that any effort, aside from the testimony of Gimmy, had been made to prove their handwriting.

The instrument having been apparently executed and witnessed out of the State, by parties shown to have resided at the time in Pennsylvania, and there being no evidence to show that they were ever in this State, a sufficient presumption is raised that the subscribing witnesses were not within the jurisdiction of the Court to let in secondary evidence of its execution. (*Valentine* v. *Piper*, 22 Pick. 89; *Newsom* v. *Luster et al.*, 13 Ill. 181.) Other cases to the same effect might be cited.

But it is said, that, in the absence of the subscribing witnesses, their signatures must be proved, or it must be shown that, after the exercise of due diligence to procure it, proof of their signatures is unattainable before it is admissible to prove the signature of the party. Conceding this to be so, no greater

52

efforts or diligence should be exacted in endeavoring to prove the handwriting of the witnesses, than is required to find and procure the witnesses themselves. The place to look for evidence to prove the handwriting of a witness would naturally be in the neighborhood of his residence; certainly not three thousand miles away in a distant State, where he has never been. The defendant could not well be expected to go to Pennsylvania for witnesses to prove the handwriting of the witnesses to the power of attorney. He might as well go there for the witnesses themselves. Nor could he be expected to start out on a random search in California, which would almost necessarily be fruitless. In *Woodman* v. *Segar*, 25 Maine, 90, the Court admitted a deed in evidence, upon proof of the handwriting of the grantor, it being shown *prima facie* that the subscribing witnesses did not reside in the State, and it not appearing affirmatively that there was any one in the State who could prove their handwriting. So also, in *Newsom* v. *Luster et al.*, 13 Ill. 182, a case almost precisely like the one in hand, as to the point in question, only the evidence of non-residence was not so clear as in this case, a similar ruling was sustained. The Court in that case, by Mr. Justice Trumbull, say: "Upon the principle settled by the cases of *Pelletreau* v. *Jackson*, 11 Wend. 123, *Clarke* v. *Saunderson*, 3 Bin. 192, and *Woodman* v. *Segar*, it was clearly unnecessary to go to Cincinnati in search of evidence to prove the handwriting of the subscribing witnesses. To have made such a requirement would have been exacting greater diligence to prove the handwriting of the subscribing witness than to procure his personal attendance, which is not to be required. The subscribing witness had never been in this State, and how was his handwriting to be proved here? Where should a party begin to hunt up the evidence, to prove in this State the handwriting of a person who resided in Cincinnati some twenty years ago, and who, so far as is known, had never been in Illinois? The thing is almost impossible, and it would be by the merest accident, if such a person could be found in hunting the State over. It would be a fruitless

effort to attempt to prove negatively that there was not evidence to be found within the jurisdiction of the handwriting of an attesting witness, who, it appears, was never within the State. The law will not exact so unreasonable a thing." These remarks apply with equal force to the case in hand, in which the witnesses to the instrument, some thirteen years before the trial, resided in the interior of Pennsylvania, and are not shown to have ever been in California. We are satisfied of the soundness of these views, and tested by the principles laid down, the circumstances appearing in proof in this case show a sufficient excuse for a failure to prove the handwriting of the subscribing witnesses to the power of attorney.

But we are by no means satisfied with the rule which requires the handwriting of the subscribing witness to be proved rather than that of the party. Such seems to have been the rule in England, and it was followed in the early cases by a number of the States; but generally, where the question has arisen during the last fifty years, the Judges have expressed great dissatisfaction with it, and only followed it because they deemed it established. (*Clarke* v. *Saunderson*, 3 Bin. 194–199; 6 Bin. 50; 10 S. & R. 199; 4 Rand. 328; *Jackson* v. *Waldron*, 13 Wend. 183, 197.)

In New York and other States it seems to have been, latterly at least, restricted to sealed instruments. The reasons attempted to be given for the rule are, to our minds, wholly unsatisfactory. And this seems to be the almost united voice of Judges who have had occasion to refer to it. Witnesses to instruments have no interest in the matter, and rarely, as every one is aware who has had much to do with the execution of documents, know or care anything about the transaction. The person who happens to be nearest is called in and requested to write his name under the word witness, and he does so and departs, often without knowing or caring what the paper is, or who the parties are. When called upon as a witness years afterwards, as every lawyer who has had occasion to prove signatures in Court knows, he rarely remembers anything about the matter. He recognizes his signature, perhaps,

and that is all he knows in regard to it. The proof of his signature raises a presumption, but it is only a presumption, that he actually saw or knew of its execution. But the party's interests are at stake, and he is not likely to put his name to a paper as a party without knowing what it is. Proof of his handwriting is necessarily positive evidence that he did in fact execute the instrument. It is difficult to account for its being there on any other hypothesis. It is obviously more satisfactory proof of the execution of the instrument than proof of the handwriting of the subscribing witness. In the language of Mr. Justice Trumbull, in the case last cited, "It is difficult to account for the signature of a party to a writing which he did not execute; but it is easy to imagine how a forged instrument might be established against him, when it is only necessary to procure the name of a person as subscribing witness to such an instrument, and then establish it by proof of the handwriting of the witness."

But the rule is a technical one, originally adopted by Judges, independent of legislative action, and the tendency of modern decisions where Courts are untrammelled by prior adjudications is, to adopt the more reasonable rule, and in the other Courts to restrict the application of the more unreasonable rule to instruments under seal. The rule of allowing proof of the handwriting of the party when the witnesses cannot be produced without requiring proof of that of the witnesses, has been adopted by many Courts of the highest authority; and it has the sanction of Mr. Greenleaf, as the following citations will show: (Greenleaf Ev. 575 and Note 1; *Valentine* v. *Piper*, 22 Pick. 90; *Woodman* v. *Segar*, 25 Maine, 90; *Yocum* v. *Barnes*, 8 B. Monroe, 496; *Sentney* v. *Overton*, 4 Bibb. 445; *Mardis* v. *Shackleford*, 4 Ala. 503; *Cox* v. *Davis*, 17 Ala. 717; *Newsom* v. *Luster*, 13 Ill. 185; *Homer* v. *Wallis*, 11 Mass. 311.)

The question, so far as we are aware, now arises for the first time in this State. Supported by the foregoing authorities, and, as we conceive, by sound reasons and good sense, we have no hesitation in holding with the Supreme Court of Illinois, in the case cited, that, "As a general rule, whenever the sub-

scribing witnesses to an instrument are beyond the jurisdiction of the Court, its execution may be proved by proof of the handwriting of the grantor or obligor."

This rule might not apply to instruments which the law requires to be attested by witnesses. In such cases proof of the handwriting of both parties and witnesses might be necessary.

It is further objected that the loss of the power of attorney was not sufficiently proved to let in secondary evidence of its contents, and that the contents were not sufficiently proved. Both objections will be considered together. The Act of 1857 modifying the common law rule as to proving the loss of instruments, provides that " duly certified copies, regularly recorded   *   *   shall be received in evidence;   *   *   provided it be shown that the originals are not under the control of the party offering said copies, or are lost." (Laws 1857, p. 317, Sec. 2.) And the Act of 1860, before cited in this opinion, places duly certified copies of all instruments in writing, actually recorded in the Recorder's office before the passage of the Act, notwithstanding defective execution, acknowledgment, etc., upon the same footing as evidence as certified copies of instruments duly recorded; " provided, that proof shall first be made that the instruments, copies of which it is proposed to use, were genuine instruments, and were, in truth, executed by the grantor, or grantors, therein named." (Laws 1860, pp. 357, 358, Secs. 1 and 2.) The affidavit of defendant, Bolton, was read, showing that the original power of attorney was not in his possession, or under his control. Gimmy testified that he gave it to Reed, and Reed that he had it recorded, took it away from the Recorder's office, and afterward, in 1853 or 1854, saw it in the hands of an attorney since dead. It was sufficiently shown not to be under the control of the party under the Act of 1857, as was held in *Skinker* v. *Flohr*, 13 Cal. 638, and *Hicks* v. *Coleman*, 25 Cal. 122.) John G. Gimmy testified that an attorney named Moore drew the original power of attorney, and that *there was but one*—that he sent it to his mother in Pennsylvania to be exe-

cuted, and it was returned to him by mail, executed; that he had seen her write and knew her handwriting; that the signature was her genuine signature; that he could not state its contents, but that he supposed at the time it authorized him to convey land, but he does not know; that he acted under it and executed a conveyance to Reed under *it*; that he loaned the original power of attorney to Reed; that he conveyed to Reed, July or August, 1852, and handed him the power before the conveyance. Moore testified that he drew a power of attorney for Gimmy to send to his mother for execution; that he was confident that it contained a power to lease and convey lands, but he could not state the language; that he took the form from the Clerk's Assistant; that there was *but one* power of attorney. Reed testified that he received from Gimmy the power of attorney; that it had two subscribing witnesses; that he had it recorded; that he received a conveyance executed under the power of attorney. A record of a power of attorney from Maria B. Gimmy to John G. Gimmy, dated February 3, 1852, containing full power to sell and convey lands, and answering the description given by the witness so far as it was described, was produced from the Recorder's office. We think, therefore, conceding the credibility of the witnesses, that the execution and genuineness of the original was sufficiently proved under the Act of 1860 to render the copy admissible, and that the identity and contents were clearly established. If not it would be difficult to establish such matters by satisfactory evidence.

The next point we shall notice is, that there was no evidence of a conveyance from Maria B. Gimmy to Joseph L. Reed.

The transcript states, that " defendant's counsel offered a deed from Maria B. Gimmy, executed under the power of attorney to Joseph L. Reed for the premises in question, dated July 15, 1852. Witness (Reed) continues: 'I received same conveyance for the exchange of some property; I have not the conveyance; it was executed under the power of attorney.' Defendant's counsel offered and read an affidavit of James R.

Bolton, the defendant, showing that he had not in his possession, nor under his control, the above mentioned power of attorney nor the deed."

It is insisted that "offering a deed is not giving it in evidence," and that it could not be in evidence, because Bolton's affidavit shows that it was not under his control. The fact of putting the deed in evidence is rather loosely stated, it is true. But the reason is manifest. When it was offered, no objection was made to its introduction. The contest was over the power of attorney, which was a necessary link in the chain of title, and as this was not duly recorded, it was the weak point in the chain. The deed could avail nothing if admitted without the power of attorney. No objection being made to the deed, nothing more was necessary to be said about it. As the foundation was laid for introducing a copy, doubtless the record of the deed, or a certified copy, was used, though it is called in the statement a deed. Something called a deed in the statement was offered in evidence, and no objection to its introduction was made, and we must presume it was received and regarded by the Court as being in evidence, for the Court in its third finding expressly finds, "that under the power, contained in said letter of attorney, the said John G. Gimmy, in the name of said Maria B. Gimmy, on the 15th day of July, 1852, sold and conveyed the said lands to one Joseph L. Reed for the consideration, as expressed in the deed, of twelve hundred dollars—which was duly acknowledged and recorded."

The deed described in the finding corresponds exactly with the one stated in the transcript to have been offered in evidence, and it is inconceivable that the Court should have made the finding unless the deed or a record copy of it was in evidence. The necessary inference from the record is, that it was in evidence in some form, and the presumptions are all in favor of the correctness of the judgment of the Court below. Error must be affirmatively shown. No objection to the introduction of the evidence below having been made, probably the attention of the attorneys was not directed to the loose form in which the introduction of the deed was stated in the

transcript. The statement was made before the amendment of the Practice Act, and only specifies in general terms that insufficiency of the evidence to support the finding will be one of the grounds relied on.

It is further objected, that the attachment proceedings in the case of *Robinson and Mead* v. *Joseph L. Reed* were improperly admitted, for the reason that no bond or affidavit was shown as a basis for issuing an attachment. It is wholly immaterial whether the attachment was valid or not. There was a judgment against Reed in the case—an execution was issued on the judgment and levied on the property ; and the premises were sold under it, no other parties having acquired rights before the judgment lien attached, or before the levy under the execution.

Another point is, that there is no evidence to support that part of the thirteenth finding, which finds that French and Robinson (Mead having conveyed to French) conveyed to the defendant, Bolton. At the time the pleadings were filed a replication was necessary, and the statute provided that every material allegation of the answer not specifically controverted by the replication should, for the purposes of the action, be taken as true. The defendants are not shown by the statement to have introduced any deed from French and Robinson to Bolton, and assuming that none was introduced, the question is whether there was an issue on that point. The allegation of the answer is as follows :

"And the defendant further says, that, on the 24th day of March, 1862, the said French and Robinson, by deed duly executed, acknowledged and recorded, conveyed said premises to this defendant for the sum of seven thousand seven hundred and fifty dollars." Now, this is a distinct allegation that there was a deed duly executed, acknowledged and recorded, and that it conveyed the premises in question for a specified consideration.

The following is the only denial in the replication by which issue is claimed by appellants to have been taken on the allegation : " And the plaintiffs further deny that said French and

Robinson, or either of them, conveyed said premises to the defendant for the sum of seven thousand seven hundred and fifty dollars, or for any other sum ; though they admit that an instrument purporting to be a deed was pretended to be made and executed by the said French and Robinson on or about the 24th day of March, A. D. 1862, purporting to transfer the said premises to said defendant."

The fact that there was a deed by French and Robinson— that it was duly executed, acknowledged and recorded, is not specifically denied, and is, therefore, under the statute, admitted for the purposes of the trial—as much so as if it were admitted in express terms. And it is in express terms admitted that one was pretended to be made by French and Robinson on the day specified, and that it purported to transfer the said premises to said defendant. Now, if the title to the premises in question was in French and Robinson, and a deed was by them duly executed, acknowledged and recorded, purporting to transfer the said premises to said defendant, it certainly did convey the premises. The mere denial that they conveyed the premises, without denying the facts which constitute a conveyance, is only to deny the effect of the instrument—the conclusion to be drawn from the facts—and not the facts themselves. It is perfectly apparent, also, from an examination of the context of this portion of the replication, that this was all that was intended to be denied. The whole theory of the replication was, not that no deed was executed and delivered by French and Robinson to Bolton, but that they had no title to convey, and, therefore, nothing passed by the deed. And the whole strain of the contest at the trial was upon the issue as to whether Robinson and Mead had any title whatever. But to give the denial its broadest signification, still it does not deny that French and Robinson conveyed the premises. It merely denies that they conveyed them *for a sum of money.* It puts in issue not the conveyance, but the conveyance *for money—for a particular consideration.* If they conveyed, it does not matter whether it was for a money consideration or not, and issue is not taken on the material part of the allega-

53

tion. (*Burke* v. *Table Mountain Water Company*, 12 Cal. 407; *Woodworth* v. *Knowlton*, 22 Cal. 168; *Kuhland* v. *Sedgwick*, 17 Cal. 126; *Morrill* v. *Morrill*, *ante*, 288; *Castro* v. *Wetmore*, 16 Cal. 380; *Buseinus* v. *Coffee*, 14 Cal. 93; *Ghirardelli* v. *McDermott*, 22 Cal. 539.)

The pleadings were verified by the oaths of the parties, and it was therefore necessary to shape their allegations and denials so as to correspond with at least the admitted facts. The allegations of a pleading are to be taken most strongly against the pleader—the presumption being that he will state his case as strongly in his own favor as the facts will justify. Hence it is necessary that he should make his allegations and denials of matters which he desires to put in issue with distinctness and precision, and without evasion. If this denial is sufficient to raise an issue of fact, the law requiring the verification of an answer to a verified pleading will be of little utility. We think upon the pleadings the defendant was not called upon to put his deed from French and Robinson in evidence.

Assuming the views thus far expressed to be correct, no error intervened to affect the finding as to any of the facts material to the determination of the rights of the parties in this action. From the facts found it appears that the title was in Robinson and Mead at the time they conveyed to Landers, on the 15th of March, 1853, and that Landers obtained a good title at that time, subject only to be defeated by a subsequent conveyance from Maria B. Gimmy to some party for a valuable consideration, without notice of his title. At that time she had made no conveyance other than that to Reed. Landers then received a valid consideration for his note and mortgage to Robinson and Mead. The subsequent foreclosure of the mortgage and sale of the premises revested the title in Robinson and Mead, under whom and their grantees, Landers became tenant, and held possession as such, paying rent till March, 1862, at which time a conveyance having been received by Mrs. Landers from Anna M. Gimmy, he repudiated the title of his landlord, and soon after commenced this suit.

Maria B. Gimmy conveyed to Anna M. Gimmy on the 23d of January, 1857.   At this time Landers was the owner and in the actual occupation of the premises, and this occupation afforded notice to Anna M. Gimmy of his title.   (*Hunter* v. *Watson*, 12 Cal. 363 ; *Lestrade* v. *Barth*, 19 Cal. 675–6 ; *Dutton* v. *Warschauer*, 21 Cal. 628.)   She was, therefore, not a *bona fide* purchaser.   Besides, there is no finding or evidence in the record that she was a purchaser without notice for a valuable consideration, and until such fact appears the title must be deemed to be in the first grantees of Maria B. Gimmy, to whom it passed as against everybody except a subsequent purchaser for a valuable consideration without notice.

The deed of Maria B. Gimmy by her attorney to Reed was duly acknowledged and recorded.   It may, perhaps, be doubted whether that of itself did not impart notice without a record of the power of attorney.   But the point was not made and it is not necessary to decide it.

On March 1st, 1861, when John G. Gimmy conveyed to McCarty, and on March 10th, 1862, when Anna M. Gimmy conveyed to plaintiff Sarah Landers, plaintiff James Landers was in the actual occupation of the premises as tenant of Robinson and Mead and their grantees, and this occupation was notice of the title of his landlord.   (*Dutton* v. *Warschauer*, 21 Cal. 628.)   Besides, at each of those dates, under the provisions of the Act of 1860, before cited, the record of the power of attorney from Maria B. to John G. Gimmey was constructive notice to said purchasers of the title of the first grantees.   (Laws 1860, p. 358.)

The other views expressed as to the conveyance to Anna M. Gimmy, apply also to these two conveyances.   So, also, Mrs. Landers paid no consideration, the deed to her being a gift.   Besides, she was a party to the foreclosure suit and necessarily had notice of the title that was affected by the decree.   It is clear, therefore, that neither McCarty nor Mrs. Landers was a purchaser for a valuable consideration without notice of the title now held by defendant Bolton.

Under no view of the facts are the plaintiffs in a position to

maintain this action; for conceding that Anna M. Gimmy was a *bona fide* purchaser, the conveyance to her appears upon the face of the deed to have been for a money consideration, and *prima facie* it was common property. Being common property, it was subject to the absolute control and disposition of her husband, John G. Gimmy, and whatever interest passed by the deed of Maria B. to Anna M. Gimmy, was conveyed by John G. Gimmy to McCarty. Such is the settled doctrine in this State. (*Pixley* v. *Huggins*, 15 Cal. 127; *Meyer* v. *Kinzer and Wife*, 12 Cal. 251; *Tustin* v. *Faught*, 23 Cal. 241; *Burton* v. *Lies*, 21 Cal. 87.) There was, then, no interest left in Anna M. Gimmy at the time she executed her deed of gift to defendant, Sarah Landers, and nothing passed by it. Whatever title defendants had other than that derived from the deed of Anna M. Gimmy to Mrs. Landers, had passed to defendant, Bolton, through the foreclosure proceedings and subsequent conveyances. As between plaintiffs and defendant, the title was in defendant and derived through plaintiff, James Landers. The plaintiff did not, and of course could not, set up title in McCarty as a basis to support this action. It will be time enough for defendant to litigate the title with McCarty, when he and McCarty become parties to a suit involving the question. But the deed from John G. Gimmy to McCarty was properly introduced in evidence to show that nothing passed to Sarah Landers by the subsequent deed of Anna M. Gimmy, introduced by plaintiffs as evidence of their title.

Entertaining these views, it is unnecessary to notice the various other points discussed in the briefs. It follows that the judgment must be affirmed, and it is so ordered.

Mr. Justice RHODES expressed no opinion.