Burt v. Baldwin.

8   487
15   189

WELLINGTON R. BURT, APPELLEE, v. MATTHEW S. BALDWIN, APPELLANT.

1. **Conflicting Testimony.** Cause tried to. the court below. There was much conflicting testimony, some of which had to be rejected as untrue. *Held*, That this court would not disturb the decree, there being evidence to sustain it on each material point.

2. **Landlord and Tenant:** POSSESSION BY TENANT. A owned and occupied a farm of four hundred acres. In 1868, he sold one hundred and sixteen acres of it to B, who afterwards sold to C. July 14, 1874, C conveyed said one hundred and sixteen acres to D, but the deed was not recorded until May 25, 1875. On the fourth of May, 1875, C mortgaged the one hundred and sixteen acres to E. A had continued to occupy the farm and to cultivate the one hundred and sixteen acres as tenant to each successive owner down to and including D, to whom he attorned after he had bargained for the land and before the execution of the deed to him. *Held*, That the open and notorious occupancy of the one hundred and sixteen acres by A was no notice to E of the title of D under his unrecorded deed from C.

APPEAL by defendant Baldwin from a decree rendered against him in the district court for Douglas county. The opinion contains a sufficient statement of the facts in the case.

*John L. Webster* and *R. E. Gaylord*, for appellant.

1. The possession of land by a tenant is notice of the landlord's title, and is enough to put subsequent

mortgagees or purchasers upon inquiry as to landlord's title. *Dutton v. Warschauer*, 21 Cal., 610–28–29. *Hanley v. Morse*, 32 Me., 287. *Daniels v. Davidson*, 16 Vesey, 249. *Landers v. Bolton*, 26 Cal., 419. Possession is sufficient to put purchaser upon his inquiry as to outstanding title, and it is his own fault if he does not ascertain the extent and character of that title, and whatever is sufficient to put him upon inquiry as to the .'ghts of others is considered legal notice to him of tL 'se rights. *Rupert v. Mark*, 15 Ill., 542. The simple independent fact of possession is sufficient to raise a presumption of interest in premises by occupant. *Pell v. McElroy*, 36 Cal., 268.

2. Burt knew of Baldwin's title to all these lands when he accepted the mortgage. The rule of law as laid down in *Tuttle v. Jackson*, 6 Wend., 226–7, that if the subsequent purchaser knows of the unregistered conveyance at the time of his purchase, he cannot protect himself against that conveyance; and whatever is sufficient to make it his duty to inquire as to the rights of others is considered legal notice to him of these rights, is so well settled that it needs no reference to authorities to sustain it; and the evidence in this case, to show that Burt knew or had reasonable cause to believe that Gallagher had previously conveyed this property to Baldwin, is so overwhelming that its simple statement is as clear as a demonstration.

Under the law of our state—sec. 16, p. 875, General Statutes—this mortgage to Burt must have been taken in good faith by him, and without notice of Baldwin's title, and the burden of proving these facts rests upon Burt. *Sanders v. Bolton*, 26 Cal., 393.

*Kennedy & Gilbert*, for appellee.

1. The general rule of law is that the possession of land is notice to the purchaser of possessor's title.

Constructive notice arising from tenancy does not ex-- tend beyond the tenant's title or apply to the title of lessor under whom the tenant holds. 4 Kent. Com., 179. 17 Ves., 293. 14 S. and R., 33. 3 Pick., 149. 8 Greel., 94. 2 Sum., 556. In England the weight of authority inclines on the side of restricting the operation of possession by a tenant to notice of the title of the actual occupant. The possession of a tenant under a lease is notice simply of his tenancy and not of his landlord's title. Wade on Notice, 281. 28 Eng. L. and Ez., 77. 2 Sum., 557. The possession must be unequivocal and easily distinguished from that of the grantor. Wade, 291. *McMechan v. Griffing,* 3 Pick., 149. *Hawes v. Wiswell,* 8 Green, 96. *Claibore v. Holmes, Billington v. Welsh,* 5 Binn., 129.

2. Implied notice of a prior unrecorded deed, to avoid a subsequent deed, must be not merely probable, but a necessary and unquestionable inference from the facts proved. Such inference can not in all cases be made from an open, peaceable, and exclusive possession. *McMechan v. Pick.,* 149. *Norcross v. Widgery,* 2 Mass., 507. 4 Kent. Com. 179. *Bellington v. Welsh,* 5 Bin., 139. *Day v. Dunham,* 2 Johns. Ch., 182. *Jolland v. Stanbridge,* 3 Ves., 478. *Hine v. Dodd,* 2 Atk., 287. *Trustee, etc., v. Wheeler,* 59 Barb., 589. *Jackson v. Van-Valkenburg,* 8 Cow., 260. *Eli v. Wilcox,* 20 Wis., 524. 8 N. H., 264.

Совв, J.

This is an action to foreclose a mortgage executed by John Gallagher. Matthew S. Baldwin was made a defendant under the general allegation that "said defendants, Matthew S. Baldwin and C. A. Johnson, have or claim to have some right, title, or interest in or to said premises described in said mortgage, the exact nature of which is to this plaintiff unknown, but

plaintiff alleges that whatever such claims or interests may be, they are all subsequent and subject to the said mortgage lien of this plaintiff.

Matthew S. Baldwin answered denying the material allegations of the plaintiff's petition, and setting up and claiming an adverse, paramount title in himself by virtue of a deed of general warranty executed by the defendant John Gallagher to said Baldwin, on the sixteenth day of July, 1874, at East Saginaw, Michigan, and recorded on the twenty-fifth day of May, 1875. That said deed was for a valuable consideration, to-wit: $14,467.00 actually paid. Said answer also alleges that he, the said Baldwin, went into the actual possession of said lands immediately upon the making of the said deed by the said Gallagher, and had remained ever since in the actual possession thereof. That at the time of the execution of the mortgage set forth in the petition the plaintiff well knew that the said Baldwin was the owner of said lands by virtue of said deed, and that he was in the actual possession thereof.

The mortgage, as stated in the petition and proved at the trial, was dated May 4, 1875, and recorded. the eighth of the same month. The deed under which Baldwin claims title to the land was executed July 16, 1874, but not recorded until the twenty-fifth day of May, 1875—after the recording of the mortgage. The testimony of the defendants is directed to three points: *First.* To establish the *bona fides* of his deed, that it was in fact made and delivered before the date of plaintiff's mortgage, and for a good consideration. *Second.* That the plaintiff knew or had notice of it at and before the receipt by him of the mortgage. *Third.* That at and before the making of the mortgage he, Baldwin, was by his tenant in such possession of the lands, or a part of them, as amounted to notice of his title to all the world.

It might be sufficient to say that the district court which tried this cause found all of these points against the appellant Baldwin, and that after a careful examination of the evidence we think it sufficient to sustain such finding as to each point.

It may be stated that an unrecorded deed of land will prevail against a subsequent purchaser or mortgagee with notice. But such deed must be perfect so as to convey title to the grantee. In other words, it must have been executed and delivered. These facts must exist before any person can be charged with notice of them. There is no conflicting evidence as to the execution of the deed by Gallagher on or about the sixteenth day of July, 1874, but the evidence in regard to its delivery is of the most conflicting and unsatisfactory character, and indeed the only satisfactory evidence that it was ever delivered is the fact of its having been filed for record May 25, 1875. The testimony of Baldwin himself negatives the idea that the deed was delivered at the time of its execution and acknowledgment. But he swears that it was delivered to him by mail in the latter part of December, 1874, and in this he is to some extent corroborated by the lady witness. But according to his own statement he immediately sent it back to Saginaw to have a certificate placed upon it. But whether he returned it to the grantor, thus enabling him to exhibit it, in derogation of the idea of its having been delivered, as claimed by the plaintiff, or whether it was sent to other parties who got the certificate attached to it and shortly afterwards remailed it to Baldwin at Chicago, whence it was sent south in pursuit of Baldwin, whom it did not overtake until the latter part of May, 1875, and after the mortgage was recorded, is not clearly proved; and there being a conflict of testimony it was no doubt construed against the party

seeking to establish facts against the record. But admitting, for the purposes of the argument only, that this deed had been duly executed and delivered before the execution of the mortgage by Gallagher and the indorsement of the notes by Burt, had Burt actual notice of the deed, or such notice as would put a man of ordinary prudence upon his inquiry? Burt himself swears that he had no notice. Gallagher swears that he informed Burt before or at the time he made and delivered to him a mortgage for $20,000 on these lands that he had already sold and deeded the land to Baldwin. This testimony must have been wholly rejected and disbelieved by the trial judge, in which we think he was justified in view of the testimony of Horr, which is reasonable, business-like, and undoubtedly true. Gallagher was desirous of obtaining Burt's indorsement for twenty thousand dollars; the security which he had to offer was a mortgage on these lands. Burt having no knowledge as to the title by which Gallagher held this land, Gallagher referred him to Horr "as to the title being in him until recently, and as knowing all about the title." True, we get this from the testimony of Burt himself, but it is so entirely reasonable that we think the trial judge justified in believing it to be true. Now let us look at Mr. Horr's testimony. Mr. Horr had previously owned these lands, had sold them to Gallagher and his brothers, the brothers had conveyed their interests to John Gallagher, and Horr held a mortgage from John Gallagher on the lands. There is no dispute as to this, besides it is shown by the record. Horr says in his testimony: "Mr. Gallagher came to me and informed me that he was negotiating with Burt for Burt's indorsement, and that if he did so he wanted to arrange for the discharge of my mortgage on the property. In two or three days after that Gallagher came in again and told me

he had completed arrangements, and that he had re-ferred Mr. Burt to me to get a description of the prop-erty, its value and location, and also as to the title to it. He said that he had stated to Burt that I knew all about it, having looked it up when I took the mort-gage." He also stated that very shortly afterwards Mr. Burt came and made inquiry concerning these lands. * * * * * * "He asked about the title, and I stated to him it was in John Gallagher."

James Gamble testifies: "I was in Mr. Burt's office in company with Mr. Gallagher and Mr. Burt on or about the third day of April. They were talking in regard to the Nebraska lands. I was asked by Mr. Gallagher to go with him to Mr. Horr's office and get a discharge of the $5,000 mortgage which Horr held upon these Nebraska lands. I went, accompanied by Mr. Gallagher. He said it was the only incumbrance upon that property, and that by discharging that mort-gage it would all be free from incumbrance."

This testimony of Burt, Horr, and Gamble, as to this question of notice, or rather want of notice, is perfectly reasonable and consistent with itself and with the known acts of the parties, but utterly inconsistent with the idea that Gallagher informed Burt that he had conveyed these lands to Baldwin. It is true we have the depo-sitions of three witnesses—Charles J. Miller, Melvin W. Palmer, and Joseph Riedy, as well as the testimony of Warren M. Brown, all testifying to different con-versations with Mr. Burt, in which they claim that he used language to the effect that he knew of the sale by Gallagher to Baldwin of the lands in question, at the time he took the mortgage. The trial judge must have disbelieved this testimony, and upon careful ex-amination of the whole testimony we are not prepared to say that in so doing he decided against the weight

of evidence, much less that there is no testimony to sustain him therein.

The only remaining question is whether the possession of the 116-acre tract by Johnson was evidence of Baldwin's title. While considering this point we will regard it as proved that the deed from Gallagher to Baldwin was executed and delivered before the giving of the mortgage by Gallagher to Burt.

Mr. Baldwin in his testimony says that he first saw the lands about the first of July, 1874. L. C. Goodsell, witness for defendant Baldwin, testifies that he came to Nebraska with Baldwin about July 1, 1874, to look at these lands; that Mr. Baldwin examined the lands, placed them in the hands of an agent and rented them. Now this was confessedly before Baldwin had any title. Baldwin says that it was even before the writing of the deed, which was afterwards left with Camp & Brooks, and which it is said afterwards followed Mr. Baldwin and party, making the tour of the southern watering places. It will not be claimed that actual possession either by a party in person, or by his tenant, is constructive evidence of a fact which does not exist. Baldwin cannot in any event be claimed to have been the owner of these lands until the delivery of the deed, which is not claimed to have been before the last days of December. He was not at Omaha after that date until the trial, and there is no pretense that he made any contract of rental to Mr. Johnson by correspondence. If, therefore, Johnson was in the open and notorious possession of these premises at any time prior to the execution of the mortgage, and Burt, being put upon his inquiry by that fact, had gone to him and made inquiry, he would probably have learned that Johnson had attorned to Baldwin in anticipation of a sale and purchase which had never been, and which probably never would be, perfected.

But the most serious objection to the possession of Mr. Johnson as notice of the title of Baldwin is that it had no definite commencement. In his late work on the law of notice, p. 130, § 302, Mr. Wade quotes with approval the opinion of the supreme court of Mississippi in the case of *Loughridge v. Bowland*, 52 Miss., 546. The author uses this language: "It has also been decided, where possession by one's lessees or tenants was regarded as sufficient, that their tenancy must commence after acquisition of the title, evidenced by such possession. In other words, where, at the time of the sale, the grantor was in possession by his tenants who afterwards attorned to the grantee, the grantor's deed being unrecorded, this was held insufficient to charge even an attaching creditor of the grantor with notice of such unregistered conveyance."

Mr. Johnson once owned this land himself. He occupied it then as he continued to do after he sold it to Horr, after Horr sold it to Gallagher, and after Gallagher executed this unregistered deed to Baldwin. His continued occupancy could scarcely be evidence of these changes in the title, some of which it is apparent he had no accurate knowledge of himself.

Considering all the testimony before us, we cannot say that there is such a preponderance of testimony against the findings of the district court as would warrant this court in disturbing the decree, but on the contrary that the findings and decree are supported by a preponderance of testimony, and must therefore be affirmed.

DECREE AFFIRMED.