AUGUSTA P. CONLEE, APPELLEE, v. JOS. B. McDOWELL AND OTHERS, APPELLANTS.

**Purchaser of Real Property:** NOTICE TO.    It is a general rule, to which, however, there are some exceptions, that the open, notorious, and exclusive possession of real property by a tenant is notice to the world of the landlord's title.    Rule applied.

APPEAL from the district court of Gage county.    Heard below before WEAVER, J., the facts being as follows:

Prior to February 1, 1879, the plaintiff owned and was in possession of lot 11, block 3, Beatrice.    She had mortgaged the premises, a foreclosure had been had, and, pursuant to an agreement between her and Smith and Dunbar the latter bid off the premises, Smith furnishing the money. A few days afterwards Dunbar conveyed to McDowell by quit-claim, McDowell giving his note to Smith for the amount Dunbar had bid for the premises, $336, and giving to Mrs. Conlee a bond for a deed.    McDowell conveyed to Smith, and Smith conveyed to Holmes.    The plaintiff brought this action alleging in substance that McDowell obtained the title in trust for plaintiff, that his conveyance to Smith and Smith's to Holmes were in fraud of her rights, that she had tendered the said sum of $336 and interest to Smith and demanded a deed, and praying that the said conveyance be set aside and McDowell be required to con-

vey to her.  Decree below for plaintiff.  Defendant appeals.

*Colby & Hazlett,* for appellants.

The bond was never filed and recorded, and Holmes' rights could not be affected.  *Lanphere v. Lowe,* 3 Neb., 139.  *Sheldon v. Conner,* 48 Me., 584.  On Holmes' purchase, cited: *Eyre v. Dolphin,* 2 B. & B., 301.  *Wickham v. Conkton,* 8 Johns., 220.  *Jackson v. Sharp,* 9 Id., 163. On possession by tenant, cited: *Burt v. Baldwin,* 8 Neb., 487.  *Attorney General v. Blackhouse,* 17 Ves., 293.  *McMechan v. Griffing,* 3 Pick., 149.  Wade on Notice, 281. *Barnhart v. Greenchilds,* 28 Eng. L. and E., 77.

*A. Hardy,* for appellee.

Holmes was charged with notice.  *Uhl v. May,* 5 Neb., 157.  *Parks v. Jackson,* 11 Wend., 464.  Wade, §§ 273, 284, 285.  *Williams v. Springg,* 6 Ohio State, 594.  *Harper v. Perry,* 28 Iowa, 57.  *Hunter v. Watson,* 12 Cal., 363.  *McKenzie v. Perrill,* 15 Ohio State, 162.  *Hood v. Fahnestock,* 1 Penn. St., 470.  *Wicks v. Lake,* 25 Wis., 71. *Fronz v. Orton,* 75 Ill., 100.

LAKE, CH. J.

The consideration of a single question discussed by counsel will dispose of this case.  That question is, whether in view of the evidence the court below was justified in finding that the defendant Holmes purchased the lot in question with notice, either actual or constructive, of the plaintiff's interest therein.

It seems that for a considerable time prior to the twenty-sixth of January, 1881, the defendant McDowell, under an arrangement with the plaintiff, held the legal title to the lot in trust for and to be conveyed to her upon the payment

by her of his note for three hundred and thirty-six dollars, at twelve per cent interest, to Smith Brothers, bankers, at Beatrice, of which the defendant Smith was one. On this note, which was given February 10th, 1879, the plaintiff had paid the interest in full to the fifteenth of June, 1880.

On the twenty-sixth of January, 1881, McDowell, without notice to the plaintiff, formally conveyed the lot by quit-claim deed to the defendant Smith, who took it with full knowledge of her interest therein. In his testimony, McDowell says of his arrangement with Smith Brothers respecting the making of this deed: "I had a conversation with Samuel Smith a short time before the deed was made, in which he insisted on the payment of my note. I told him I had not any money I wanted to use in that way. He insisted on payment, or a deed to the premises. I then told him that I had promised Mrs. Conlee a deed if she would pay in a reasonable time. I asked him if he would carry out my contract, or words to that effect; he answered that he would. I made the deed in a short time and sent it to the bank and they sent me my note." Not only this, but Smith himself admits that when he took the deed he "had understood in some manner that there was a bond in existence by which McDowell was to deed the property to Mrs. Conlee on the payment of a certain note." On giving this testimony he was asked, "What note was that?" and answered, "This three hundred and thirty odd dollars." He admits also that the several payments of interest on this note were made, not by McDowell, but by either the plaintiff or her husband. Indeed there is no doubt whatever that, in taking this conveyance, Smith simply stepped into McDowell's shoes and took the lot subject to the plaintiff's right to have the title conveyed to her upon paying the stipulated price.

It appears that the first information the plaintiff had of this conveyance to Smith was in May, 1881, on going to Smith Brothers' bank to pay some interest on, and to see

about paying off, the McDowell note, when Smith told her that he "held the deed to the property himself," and would convey it to her only on condition of her paying the amount still due thereon, and also something over five hundred dollars more which her husband owed him. This, she says, she refused to do, but told him she would pay what she herself owed, which "he said he would not take." And Smith himself says of this interview at which Mrs. Conlee offered to pay what she still owed on the lot under her contract with McDowell: "I told her that Conlee (her husband) was owing us some money besides, and I would not make the deed unless the whole matter was settled." This exaction was of course unwarranted, and Mrs. Conlee was right in rejecting it.

On the twenty-first of July following, Smith, on his own suggestion, as it seems, and without any apparent reason, except perhaps to embarrass Mrs. Conlee, and force her to accede to his unjust demand to save her property, formally sold and conveyed the lot to Holmes, who was then, in certain real estate transactions, his partner. Under this state of facts we do not hesitate to say that, as against Mrs. Conlee, Smith was guilty of a palpable fraud, which, if permitted to succeed, would result in robbing her of property worth, as the evidence shows, some twelve or thirteen hundred dollars, and on which he had the right to demand from her less than four hundred dollars. It is the delight of the law to thwart such schemes whenever it is possible to do so.

But how is it with the defendant Holmes? Under the evidence can it reasonably be said that he was not a party to the fraud? He has not deigned to give us his version of the affair by appearing as a witness in the case. But the circumstances of his purchase as given by Smith, on whom he seems to rely, are not at all favorable to his claim of being an innocent purchaser. According to the testimony of Smith, whose object as we have seen clearly was to defraud Mrs. Conlee, he met Holmes on the street and said

to him that he had a piece of property he wanted to sell him for a thousand dollars. That thereupon Holmes, without any knowledge of the property, and without going to see it, or making any inquiry concerning it, at once accepted the offer and purchased it. If, indeed, Holmes were not fully aware of Smith's purpose in selling the lot, of which there is at least a strong suspicion, intensified by his silence, the most favorable light in which he can be viewed shows him to have been an exceedingly pliant and available although innocent tool in the perpetration of the fraud.

But whether Holmes had actual notice of Mrs. Conlee's interest in the lot, or not, is quite unimportant. That he at least had constructive notice is satisfactorily proved, and that is enough to defeat him. Under her arrangement with McDowell, and at the time of his transfer of the title to Smith, Mrs. Conlee was in the exclusive possession of the property, as the home of herself and family. Neither McDowell nor Smith ever had possession. At the time Smith sold to Holmes, Mrs. Conlee, although then living in Lincoln, was still in possession of the property by her tenant, George Hartley, who, as his testimony, which is not disputed, satisfactorily shows, was living on the premises on the 21st of July, 1881. It is insisted by counsel that the evidence on this point is not sufficiently definite. It is true that to a question as to when he moved into the house he answered rather indefinitely: "About the 20th of July, 1881." But afterwards to the inquiry, "How long did you keep the house?" he said, "from July 20th to the 25th of August." On this showing we are of opinion that the court below was warranted in finding the premises in the occupancy of Hartley on the 21st of July, the day on which Holmes made his purchase. That Hartley entered as tenant of Mrs. Conlee is unquestioned. Therefore, if this possession by the tenant of Mrs. Conlee may properly be said to have been constructive notice of her

interest in the property, Holmes is clearly chargeable with it.

But it is claimed the possession of a tenant is not notice of his landlord's title, but simply of his own interest in the property; and cases are cited which in a measure support that view. It was at one time so held in California. *Smith v. Dall,* 13 Cal., 510. But that decision was afterwards overruled, and the doctrine there established that "open, notorious, and exclusive possession of real estate by a tenant, is sufficient to put a purchaser upon inquiry as to the landlord's title." *Dutton v. Warschauer,* 21 Cal., 609. See also *Hanly v. Morse,* 32 Me., 287. *Pitman v. Gaty et al.,* 10 Ill., 186. *Landers v. Bolton,* 26 Cal., 419. And such we think is the general rule, to which, however, there are numerous exceptions, one at least of which was recognized, and influenced our decision in *Burt v. Baldwin,* 8 Neb., 487, to which we are referred as supporting the rule urged on behalf of Holmes. The exception to the general rule recognized in that case is, that the tenancy must commence after the lessor acquires his title. And this is the application there made of it. "Mr. Johnson once owned this land himself. He occupied it then as he continued to do after he sold it to Horr, after Horr sold it to Gallagher, and after Gallagher executed this unregistered deed to Baldwin. His continued occupancy could scarcely be evidence of those changes in the title, some of which it is apparent he had no accurate knowledge of himself."

Here, however, we encounter no such difficulty. The plaintiff acquired her right long before she leased to Hartley, and, as we have seen, had for several months at least been in the actual occupancy of the property herself. Indeed, so far as appears, only she and her tenants had been in possession of it at any time. We are of opinion, therefore, that Holmes is chargeable with notice of the plaintiff's right to the lot, and that she is entitled to the relief which the court below gave.

It is claimed on the part of the plaintiff, that the amount found by the court to be due on the lot, and which she is required by the decree to pay, is too large. This claim is based on the fact of a tender of payment, which it is said stopped the accruing of interest. This would have been so if the tender had been kept good. The allegation that it was kept good is denied, and there is no evidence on the subject.

JUDGMENT AFFIRMED.

THE other judges concur.